CHIEF JUSTICE TURNAGE
delivered the Opinion of the Court.
The District Court for the Fourth Judicial District, Missoula County, sitting as the trier of fact, convicted Joe Junior Cowan of aggravated burglary and attempted deliberate homicide. He appeals. We affirm.
The issues are:
1. Did the State prove the mental element of the crimes of attempted deliberate homicide and aggravated burglary beyond a reasonable doubt?
2. Do the Montana statutes governing the presentation of evidence of mental disease or defect in effect establish a conclusive or unrebuttable presumption of criminal intent in contravention of the doctrine enunciated in Sandstrom v. Montana, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979)?
3. Does sentencing and confining Cowan to prison violate the Eighth and Fourteenth Amendments to the United States Constitution because of his mental condition?
*512 On April 23 or 24, 1990, Joe Junior Cowan broke into a United States Forest Service cabin at the Lolo Work Center, eighteen miles west of Lolo, Montana. When the occupant of the cabin came home on the evening of the 24th, it was clear to her that someone had been in her cabin eating her food, watching her television, and generally making himself at home. She called “911” and locked her doors before Cowan again broke in and assaulted her -with a tree-planting tool called a hodag.
Sheriff’s deputies responding to the victim’s phone call apprehended Cowan at the Work Center. He had in his possession a backpack containing some of the victim’s belongings. He did not resist arrest. The victim was found semi-conscious on the floor of her kitchen. She survived, despite injuries including a punctured lung, broken ribs, a broken scapula, a dislocated shoulder, and a skull fracture.
Cowan has been diagnosed as suffering from paranoid schizophrenia, a serious mental disorder. Prior to trial, he was evaluated by psychiatrists and found competent to stand trial.
Cowan waived his right to a jury trial. At his bench trial, he argued that he did not act deliberately in committing these offenses. He asserts that he was in an acute psychotic episode at the time of the attack and that he was under the delusion that the victim was a robot, not a human being. Mental health professionals testified for both Cowan and the State on this issue. The court found Cowan guilty as charged.
At Cowan’s sentencing hearing, the court heard argument about whether he should be confined in a prison or a mental institution. The court ordered him committed to the custody of the Montana Department of Institutions “for placement in a facility deemed appropriate to [his] need for treatment and society’s need for protection from [him].”
I
Did the State prove the mental element of the crimes of attempted deliberate homicide and aggravated burglary beyond a reasonable doubt?
Our standard of review is whether, viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found Cowan guilty beyond a reasonable doubt of the crimes with which he was charged. State v. Bower (1992), 254 Mont. 1, 6, 833 P.2d 1106, 1110. The charge of attempted deliberate homicide required *513 proof that Cowan purposely or knowingly attempted to cause the death of another human being. Sections 45-4-103 and 45-5-102, MCA. The aggravated burglary charge required proof that he knowingly entered or remained in an occupied structure with the purpose to commit an offense and was armed with a weapon. Section 45-6-204(2)(a), MCA. Cowan concedes the conduct elements of both offenses. He challenges the finding that he acted knowingly or purposely.
“Knowingly” and “purposely” are defined at § 45-2-101(33) and (58), MCA:
(33) “Knowingly” — a person acts knowingly with respect to conduct or to a circumstance described by a statute defining an offense when he is aware of his conduct or that the circumstance exists. Aperson acts knowingly with respect to the result of conduct described by a statute defining an offense when he is aware that it is highly probable that such result mil be caused by his conduct. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person is aware of a high probability of its existence. Equivalent terms such as “knowing” or “with knowledge” have the same meaning.
(58) “Purposely” — a person acts purposely with respect to a result or to conduct described by a statute defining an offense if it is his conscious object to engage in that conduct or to cause that result. When a particular purpose is an element of an offense, the element is established although such purpose is conditional, unless the condition negatives the harm or evil sought to be prevented by the law defining the offense. Equivalent terms such as “purpose” and “with the purpose” have the same meaning.
Cowan contends the most conservative conclusion one could draw from the expert testimony in this case is that it clearly raised a reasonable doubt about whether he acted deliberately in committing the offenses. He cites the evidence that he had suffered for years from a serious mental disorder, paranoid schizophrenia. A psychologist testified on behalf of Cowan that there was “reasonable scientific evidence” that he was suffering an acute psychotic episode at the time of the incident. The psychologist who appeared on behalf of the State testified that “the presence of his disorder ... plus that kind of behavior certainly raised the possibility of psychosis at that time.”
However, the expert testimony concerning whether Cowan was in a psychotic episode at the time of the attack was less than unequivo *514 cal. Exaggeration of symptoms was a concern. It was not until his third interview with the State’s psychologist that Cowan stated he was under a delusion that the victim was a robot at the time of the attack. Before that, he described her as a “large white woman” who looked stronger than he was.
The experts testified that Cowan’s paranoid schizophrenia is episodic and that it waxes and wanes. They testified that they could not determine with certainty whether Cowan was in the midst of a psychotic episode at the time of the attack. Also, the State’s expert testified that Cowan’s intelligence, motive, and past experiences were sufficient to enable him to falsify symptoms of psychosis. One of Cowan’s experts testified that Cowan had a history of “going into places that belonged to other people and just basically hanging around for a while and eating.”
The expert witnesses also testified that Cowan had a history of assaults on females and had been through the criminal process before. The psychologist who testified for Cowan admitted that, according to the diagnostic manual he used, malingering should be strongly suspected in certain circumstances, including if the patient is referred in a legal context or if the person has antisocial personality disorders. He also testified that, in answer to a question in a psychological test, Cowan stated that he frequently lies to get out of trouble.
The weight of evidence and the credibility of witnesses are within the province of the trier of fact. State v. Whitcher (1991), 248 Mont. 183, 188, 810 P.2d 751, 754. Afactfinder may find credible some, all, or none of the testimony of any witness. State v. LeDuc (1931), 89 Mont. 545, 562, 300 P. 919, 926. As the trier of fact in this case, the court could have, for example, found credible the evidence that Cowan suffers from paranoid schizophrenia but disbelieved that Cowan was in a psychotic state which prevented him from acting knowingly or purposely on April 24,1990.
Moreover, the issue before the court in the trial phase of this action was not whether Cowan was in a psychotic state, but, as stated above, whether he acted purposely or knowingly. The existence of a mental disease or defect in a person does not necessarily preclude the person from acting purposely or knowingly. State v. Byers (Mont. 1993), 861 P.2d 860, [50 St.Rep. 1162], citing State v. Korell (1984), 213 Mont. 316, 690 P.2d 992. The State’s expert felt that, on April 24, 1990, Cowan was able to act with purpose or knowledge. Cowan’s expert psychiatrist agreed that eyewitness testimony is as important in determining what a person was feeling or thinking at a particular *515 time as is the testimony of experts. He did not obtain information from eyewitnesses before rendering his opinion, however.
Cowan states that the eyewitness testimony of the victim and the officers who arrested him describes bizarre, senseless, reckless, and terrifying behavior. He refers to his actions of trying to tear the license plates off the victim’s car prior to attacking her, approaching the victim even when he could see she had a shotgun pointed at him, and, when the authorities arrived, running from them only to retrieve his backpack.
A deputy county sheriff who talked to Cowan and offered him a ride on the day before the attack, near the Work Center, stated that Cowan was coherent and able to carry on a normal conversation then. Cowan told the officer he planned on camping in the area. At the time of the attack, Cowan was lucid enough to be able to eavesdrop on the victim’s telephone call to “911” from an extension phone in another building. He was rational enough to slash the tires on the victim’s car and to use a tool to break through the locked front door of her cabin after finding all the doors to the cabin locked. The victim described Cowan circling her cabin before he broke in, mocking her pleas to leave and to let her go. She described his facial expression as “mad, angry, serious.” He called her a “society bitch,” in addition to calling her, as the defense points out, a “robot bitch.” After he entered the cabin, and in the midst of assaulting her with the hodag, he wrestled the shotgun away from her and attempted to shoot her with it.
The District Court found that, prior to his attack on the victim, Cowan had made no statements or comments to mental health care givers indicating a delusional belief system involving the existence of robots disguised as humans. There is no evidence to the contrary in the trial transcript. The court further found that, in discussing the attack with mental health professionals, Cowan has referred to the victim as “she,” “her,” and a “white woman.” That finding is supported in the record. The court then found that, during the attack, Cowan “was conscious of the fact that [the victim] was a human woman.”
After reviewing the record, and viewing it in a light most favorable to the prosecution, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Cowan possessed the requisite mental state to be convicted of the crimes with which he was charged.
II
Do the Montana statutes governing the presentation of evidence of mental disease or defect in effect establish a conclusive or *516 unrebuttable presumption of criminal intent in contravention of the doctrine enunciated in Sandstrom v. Montana?
In Sandstrom v. Montana (1979), 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39, the United States Supreme Court established that the Due Process Clause prohibits the use of a presumption which relieves the prosecution of the burden of proving mental state by requiring an inference of the existence of criminal intent from the fact of criminal conduct. In that case, the impermissible presumption was embodied in a jury instruction which recited statutory language providing that “a person intends the ordinary consequences of his voluntary acts.”
Because this case was tried to the court, there were no jury instructions. Cowan bases his argument on statutes upon which he believes the court must have relied.
Evidence of a mental disease or defect is admissible in Montana under § 46-14-102, MCA, to prove that a criminal defendant did or did not have a state of mind that is an element of a charged offense. Cowan argues that because mental disease or defect does not, however, constitute a valid defense to a criminal charge in Montana, a conclusive presumption is established as to mental state in violation of the Due Process Clause as discussed in Sandstrom.
Cowan also argues that the court must have applied § 45-5-112, MCA. That statute provides that “[i]n a deliberate homicide, knowledge or purpose may be inferred from the fact that the accused committed a homicide and no circumstances of mitigation, excuse, or justification appear.” Cowan argues that if any evidence of organized or integrated conduct will suffice to establish criminal intent beyond a reasonable doubt, in spite of clear manifestations of insanity, then no one who commits a criminal act can ever be acquitted on grounds of insanity because it would be impossible for anyone to cause harm without engaging in a minimal level of organized conduct.
We have previously affirmed the constitutionality of the abolition of the insanity defense in terms of violation of the right to due process. Byers, 861 P.2d at 866; Korell, 690 P.2d at 1002. As we noted in Byers and Korell, the United States Supreme Court has determined that the Due Process Clause does not require the use of any particular insanity test or allocation of burden of proof. Leland v. Oregon (1952), 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302, reh. denied, 344 U.S. 848, 73 S.Ct. 4, 97 L.Ed. 659.
Section 45-5-112, MCA, provides that any evidence of organized or integrated conduct may suffice to establish criminal intent in a *517 deliberate homicide beyond a reasonable doubt. The ultimate determination is left to the finder of fact. Section 45-5-112, MCA, establishes a permissive inference, not a conclusive presumption. A statute establishing a permissive inference does not violate the rule stated in Sandstrom. See State v. Woods (1983), 203 Mont. 401, 415, 662 P.2d 579, 586; State v. Coleman (1979), 185 Mont. 299, 397-98, 605 P.2d 1000, 1052-53, cert. denied, 446 U.S. 970, 100 S.Ct. 2952, 64 L.Ed.2d 831, reh. denied, 448 U.S. 914, 101 S.Ct. 34, 65 L.Ed.2d 1177.
We hold that the Montana statutes governing the presentation of evidence of mental disease or defect do not establish a conclusive or unrebuttable presumption of criminal intent in contravention of the doctrine enunciated in Sandstrom.
Ill
Does sentencing and confining Cowan to prison violate the Eighth and Fourteenth Amendments to the United States Constitution because of his mental condition?
Cowan states that it is inhumane to consider the insanity of a person accused of a crime only to reduce the degree of the crime or the punishment therefor. He argues that sentencing an insane person like himself to the law-of-the-jungle conditions in prison is essentially a death sentence. He cites People v. Skinner (Cal. 1985), 704 P.2d 752. In that case, the California Supreme Court stated that the M’Naghten test of insanity, which has been used since 1850, reflects a fundamental principle of criminal law. Skinner, 704 P.2d at 759.
We decline to adopt the reasoning of the California Supreme Court in Skinner. As we stated above, the United States Supreme Court has not required the use of any specific insanity test for purposes of due process. Montana’s law allows consideration of a defendant’s mental disease or defect at three stages — determination of fitness to stand trial, at trial to disprove state of mind, and at sentencing. Korell, 690 P.2d at 996-97. This Court has further explained:
The [Montana] legislature has made a conscious decision to hold individuals who act with a proven criminal state of mind accountable for their acts, regardless of motivation or mental condition. Arguably, this policy does not further criminal justice goals of deterrence and prevention in cases where an accused suffers from a mental disease that renders him incapable of appreciating the criminality of his conduct. However, the policy does further goals of protection of society and education.
*518 Our legislature has acted to assure that the attendant stigma of a criminal conviction is mitigated by the sentencing judge’s personal consideration of the defendant’s mental condition and provision for commitment to an appropriate institution for treatment, as an alternative to a sentence of imprisonment.
Korell, 690 P.2d at 1002.
We reiterate that Cowan was not sentenced to prison, but was placed in the custody of the Department of Institutions. The court specifically stated its purpose to provide for treatment of Cowan’s mental illness at a different facility if the Director of the Department of Institutions determines treatment at a different facility is needed.
We hold that the sentence imposed by the District Court does not violate the Eighth and Fourteenth Amendments to the United States Constitution.
Affirmed.
JUSTICES HARRISON, GRAY, WEBER and McDONOUGH concur.