No. 03-244

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 342

STATE OF MONTANA,

Plaintiff and Respondent,

v.

ERNEST A. TISON,

Defendant and Appellant.

APPEAL FROM: District Court of the Fourth Judicial District,
In and For the County of Mineral, Cause No. DC 2000-31,
Honorable John S. Henson, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Chad Wright, Appellate Defender, Helena, Montana

For Respondent:

Honorable Mike McGrath, Attorney General; Tammy K. Plubell,
Assistant Attorney General; Helena, Montana

M. Shaun Donovan, County Attorney, Superior, Montana

Submitted on Briefs: August 28, 2003

Decided: December 15, 2003

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1      On June 22, 2000, Ernest Tison was charged with assault with a weapon, assault on a minor and partner family member assault.   A trial was held, and Tison was found guilty of the charges and received a sentence of twenty-six years.   Tison now appeals that judgment.   We reverse for the reasons listed below.

¶2      During the pre-trial process, Tison's mental fitness to proceed became an issue.   At his initial appearance on June 22, 2000, Tison pled guilty to all three charges, but the District Court refused to enter the plea because Tison would not admit to having committed the underlying elements of each of those crimes.   The District Court then entered pleas of not guilty on Tison's behalf.

¶3      On August 7, 2000, Tison's court-appointed counsel requested that Tison receive a mental examination.   Tison's counsel noted that Tison kept fluctuating between wanting to plead guilty to request the maximum sentence and wanting to take the matter to trial.   Tison had been sending strange letters to the county attorney claiming innocence and then guilt, as well as making statements against interest.   The District Court ordered Tison to undergo an examination.   Dr. Shea examined Tison and found him competent.   Shortly thereafter, Tison experienced a psychotic episode with bizarre, disruptive and aggressive behavior.   In September, Tison informed the court via letter that, "[my attorney] has been fired as of Sep 14, 2000 in this case He has been Replaced with the Lord Jesus Christ Attorney At Law."   At the jail, Tison rambled incomprehensibly, screamed profanities, tore his Bible, plugged his toilet and flooded his cell, stripped off his clothes, and attacked officers who moved him

from his cell. At a September 28, 2000, status hearing, Tison informed the court that he had a deep hatred for his attorney and directed the court's attention to his earlier letter. He also made other allegations, such as private conversations with his counsel at the jail were being monitored by the jail staff. The court conducted an *in camera* review of Dr. Shea's examination report on Tison. Although Dr. Shea had found Tison fit to proceed, the District Court found him unfit to proceed and committed Tison to the Department of Public Health and Human Services for placement at the Montana State Hospital at Warm Springs.

¶4 On December 22, 2000, the District Court received an evaluation from the Montana State Hospital confirming that Tison was mentally ill and unfit to proceed. The report also indicated it was unknown whether or not Tison would regain fitness in the reasonably foreseeable future. After Tison's first ninety-day commitment ran out, the court committed him for an additional ninety-day period. On March 29, 2001, the District Court received the second evaluation from the State Hospital which reversed the previous diagnosis and found that Tison was now fit to proceed. On May 23, 2001, the District Court declared that Tison was fit to proceed and resumed the criminal proceedings against him. After a two-day trial, the jury found Tison guilty of all three charges. Tison was then sentenced to twenty-six years in the Montana State Prison without any parole. Tison now appeals.

¶5 Tison claims that § 46-14-221, MCA, which allows commitments for up to ninety days, divests a district court of its jurisdiction after the expiration of that time if the court has not found a defendant fit to stand trial. The State contends that, although the court's first commitment order specifically stated that it was made pursuant to § 46-14-221, MCA, the

3

court meant to invoke § 46-14-202, MCA, which allows commitment for sixty days or a longer period as the court determines to be necessary. This presents a question of statutory interpretation. Questions of law and statutory interpretation are reviewed for correctness. *State v. Meeks,* 2002 MT 246, ¶ 15, 312 Mont. 126, ¶ 15, 58 P.3d 167, ¶ 15.

¶6    Montana abolished the insanity defense in 1979, substituting alternate procedures for considering a defendant's mental condition. *Meeks,* ¶ 20. Those procedures ensure consideration of the mental condition of a defendant at three phases of the trial process: (1) a pre-trial determination of fitness to stand trial; (2) at trial to disprove state of mind; and (3) at sentencing. *State v. Cowan* (1993), 260 Mont. 510, 517, 861 P.2d 884, 889. We are here concerned with the first, the determination of fitness to stand trial.

¶7    District courts faced with a defendant with a potential lack of fitness to stand trial are governed by two statutes. The first requires the district court to appoint a psychiatrist or a psychologist to examine the defendant. Section 46-14-202(1), MCA. The appointment may be made coterminously with a commitment to a suitable facility for the purpose of examination for a period not exceeding 60 days *or a longer period as the court determines to be necessary*. Section 46-14-202(2), MCA.

¶8    A second statute also allows commitment but only when the court determines the defendant lacks fitness to proceed. Section 46-14-221, MCA. Once that determination has been made, the proceedings must be suspended and the defendant committed. Section 46-14-221(2)(a), MCA. A treatment plan must be developed to assist the defendant in gaining

4

fitness to proceed. Section 46-14-221(2)(b), MCA. During Tison's proceedings, the following provision was in effect:

> (c) The committing court shall, within 90 days of commitment, review the defendant's fitness to proceed. If the court finds that the defendant is still unfit to proceed and that it does not appear that the defendant will become fit to proceed within the reasonably foreseeable future, the proceeding against the defendant must be dismissed, except as provided in subsection (4), and the prosecutor shall petition the court in the manner provided in chapter 20 or 21 of Title 53, whichever is appropriate, to determine the disposition of the defendant pursuant to those provisions.

Section 46-14-221(2)(c), MCA (1999) (the 2003 legislature moved that provision to § 46-14-221(3)(a), MCA, but the ninety-day limit remains as does the requirement of dismissal, *see* Sec. 4, Ch. 452, L. 2003).

¶9 We recently reviewed this same statute in *State v. Meeks,* 2002 MT 246, 312 Mont. 126, 58 P.3d 167. The district court determined the defendant in *Meeks* was unfit to proceed on August 18, 1999. *Meeks,* ¶ 6. Ninety days later, the district court received an evaluation that Meeks was unable to assist in his own defense. *Meeks*, ¶¶ 8, 22. The district court, however, did not dismiss the case. *Meeks*, ¶ 12. Rather, the district court allowed Meeks to remain in the state hospital fighting the propriety of his medication plan until May 9, 2000, almost nine months later, when it declared him fit to proceed to trial. *Meeks*, ¶¶ 9, 12.

¶10 Meeks claimed that, after ninety days of commitment, the district court was required to dismiss the criminal charges against him and thereafter the State lacked the power to proceed further with criminal charges. *Meeks*, ¶¶ 18-19, 22. We agreed that Meeks' claim was jurisdictional. The charges against Meeks should have been dismissed when, after

5

ninety days, the report indicated he was still unfit and there was no evidence that he would become fit within the reasonably foreseeable future. *Meeks*, ¶ 26.

¶11    It is well settled that after only a pre-trial competency hearing, it is unconstitutional to indefinitely hold a person who is unfit to proceed without following the civil or criminal commitment procedures provided by state law; due process requires, at a minimum, some rational relation between the nature and duration of commitment and its purpose. *Jackson v. Indiana* (1972), 406 U.S. 715, 738, 92 S.Ct. 1845, 1858, 32 L.Ed.2d 435.  In Montana, our statute is clearly designed to prevent the abhorrent situation where a defendant languishes indefinitely in a mental hospital with criminal charges hanging over his head like the sword of Damocles.  The mandatory term "shall" in § 46-14-221, MCA, requires the committing court to review the defendant's fitness to proceed within ninety days of the original commitment.  After the expiration of the ninety days, if the court finds that the defendant is still unfit to proceed and it does not appear that the defendant will become fit to proceed within the reasonably foreseeable future, the proceeding against the defendant "must" be dismissed.  Although the law in Montana does not allow the prosecution of someone who is not fit to proceed to trial, neither does it mandate freedom for potentially violent mentally ill individuals.  Section 46-14-221, MCA, provides that once the criminal proceeding has been dismissed, the next mandatory step is for the prosecutor to pursue civil commitment proceedings under Chapter 20 or 21 of Title 53.  Section 46-14-221(2)(c), MCA (1999).

¶12    In the present case, Tison asserts that, as in *Meeks*, his case should have been dismissed ninety days after he was committed because at that time he was still unfit to

6

proceed and it was not apparent that he would become fit to proceed within the reasonably foreseeable future. Although the District Court specifically referenced § 46-14-221, MCA, in its commitment order, it did not have the recommendation of a qualified psychiatrist or a licensed psychologist stating that Tison was unfit to proceed. Thus, the State contends, the court's reference to § 46-14-221, MCA, was a mistake; rather, the court's intent was to invoke § 46-14-202, MCA, for further examination to determine whether or not Tison was fit to proceed.

¶13 The record does not support the State's assertion. It was Tison's counsel who originally requested that Tison be examined due to his vacillating between pleading guilty and requesting the maximum sentence or going to trial. Dr. Shea examined Tison and found him fit to proceed. After that examination, but prior to the next court date, Tison exhibited bizarre behavior in the jail. At the hearing on September 28, 2000, the District Court conducted an *in camera* review of Dr. Shea's report. Afterwards, the District Court stated, "Well, under the statute, at this time, I'm going to order an evaluation at the Montana State Hospital in this matter." The order of commitment issued that same day stated: "Pursuant to the provisions of Section 46-14-221 M.C.A., the Court *sua sponte*, hereby raises the issue of the Defendant's fitness to proceed and finds at the present time he is unfit to proceed and suspends the proceedings against him."

¶14 The State only offers conjecture that the District Court intended for Tison to receive treatment and further evaluation pursuant to § 46-14-202, MCA. While we do not know the court's intent, we do note that a ninety-day commitment pursuant to § 46-14-221, MCA, is

7

not inconsistent with an intent to require treatment and further evaluation. The statute mandates that the institution to which the defendant has been committed shall develop an individualized treatment plan to assist the defendant in gaining fitness to proceed. Section 46-14-221(2)(b), MCA. The ninety-day review contemplates that defendants may have attained fitness to proceed during those ninety days.

¶15 The State also asserts that the District Court could not have made the determination that Tison was unfit to proceed on September 28, 2000, absent a supporting recommendation of a mental health professional. Both statutes contemplate examination of the defendant by a psychologist or a psychiatrist. Section 46-14-202(1), MCA, mandates the appointment of a qualified psychiatrist or licensed clinical psychologist if the issue of fitness is raised by the district court, defense counsel, or the prosecution. Here, counsel originally brought the issue to the court's attention. The court then ordered that Tison be examined. Accordingly, Dr. Shea examined Tison. Although § 46-14-221, MCA, does not mandate an examination by either a qualified psychiatrist or a licensed psychologist, it states that if neither the prosecution nor the defendant's counsel contests "the finding of the report filed under 46-14-206, the court may make the determination on the basis of the report." Section 46-14-221(1), MCA. The reference to the report implies that there should be a report made by a qualified psychiatrist or a licensed psychologist. Here, there was such a report and neither party contested the finding of the report. The District Court conducted an *in camera* review of the report and took it into consideration. The District Court also took into account the statements made by Tison at the hearing as well as reports of his behavior at the jail. Those

8

incidents occurred after Dr. Shea examined Tison. Once the issue was raised, it was incumbent upon the District Court to make a determination about Tison's fitness to proceed. The District Court was not obligated to follow Dr. Shea's recommendation. The District Court was acting within its discretion in finding him unfit to proceed. The District Court was then required to review the fitness to proceed within ninety days. Upon expiration of the ninety days, Tison had not been found fit to proceed nor was there a finding that it appeared that he would become fit to proceed within the reasonably foreseeable future. Absent such findings, the District Court was required to dismiss the criminal charges against Tison. Just as in *Meeks*, once the ninety-day statutory period expired, the State lacked the power to proceed further with criminal charges.

¶16    For the foregoing reasons, the judgment of the District Court is reversed and remanded for proceedings consistent with this Opinion.


/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ JIM REGNIER
/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ JIM RICE

9