# FILED

August 5 2008

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 07-0397

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 277

STATE OF MONTANA,

Plaintiff and Appellee,

v.

TRENT MICHAEL MECKLER,

Defendant and Appellant.

APPEAL FROM:     District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DC 06-104
Honorable Jeffrey H. Langton, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Steven N. Eschenbacher, Deputy Public Defender; Hamilton, Montana

For Appellee:

Hon. Mike McGrath, Montana Attorney General, Sheri K. Sprigg,
Assistant Attorney General; Helena, Montana

George Corn, Ravalli County Attorney, T. Geoffrey Mahar,
Deputy County Attorney; Hamilton, Montana

Submitted on Briefs:  June 25, 2008

Decided:  August 5, 2008

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1    Appellant Trent Michael Meckler appeals the judgment and commitment of the Twenty-First Judicial District Court, Ravalli County, finding him guilty of aggravated assault. We affirm.

¶2    The sole issue on appeal is whether Meckler lacked the requisite mental state of "purposely or knowingly" due to a mental disease or defect when he committed the offense.

### FACTUAL AND PROCEDURAL BACKGROUND

¶3    On June 10, 2006, Meckler went to the emergency room at Marcus Daly Hospital in Hamilton, Montana, and requested a CT scan,[1] telling the admitting clerk he wanted to see some broken bones in his head. Meckler was told he needed to have an order from a doctor in order to have a CT scan. After rejecting the clerk's offer for Meckler to visit with an ER nurse or doctor, he exited the hospital. Although the clerk had an "uneasy feeling" about Meckler and watched to make sure he exited the hospital grounds, it was apparent to her that Meckler understood what she was saying and responded with intelligent questions of his own during their conversation.

¶4    After leaving the hospital, Meckler began walking along the sidewalk about thirty feet in front of 86-year-old Jean Penrod, who was walking her dog. At some point, Meckler stopped walking and stepped off the path, allowing Penrod to pass. As she did, Meckler struck Penrod in the face, knocking her into a ditch. Penrod suffered a broken

---

[1] This phrase stands for computed tomography, a medical imaging device.

hip, a broken jaw, and other broken bones in her face. She had no idea what happened or how she ended up in the ditch, but when she looked up, she saw Meckler hurrying away from her. A couple driving along the road saw Penrod in the ditch and stopped to help her. As they did, they saw Meckler look back toward them and then start to run. When Penrod was brought to the ER, the admitting clerk asked Penrod if the man who attacked her was wearing the same clothes that Meckler had been wearing ten or fifteen minutes earlier. Penrod confirmed that he was. The admitting clerk called 911.

¶5 Ravalli County Deputy Sheriff Shad Pease located Meckler within minutes after receiving the 911 call. When a Hamilton police officer arrived, they asked Meckler whether he had met anybody on the roadway. Meckler responded that "some lady whacked me in the back with a stick—I punched her." No cane or other stick was ever located by law enforcement and Penrod denied using one to walk. According to law enforcement, their conversation with Meckler was totally normal. Meckler was fully coherent, responded appropriately to questioning, and did not display any signs of mental illness. In addition, Meckler answered his cell phone while he was being questioned and conducted a normal conversation with whomever was on the other line. The officers took Meckler to the ER where Penrod was being treated. When he was informed that he was under arrest, Meckler's immediate response was, "Is it a felony?" Meckler appeared lucid, coherent, and functional just prior to and just after he attacked Penrod.

3

¶6    Despite originally telling police that he had punched Penrod only after she tried to hit him with a stick, Meckler later told authorities that he had hit Penrod because he had seen a 6'10" tall apparition of his ex-wife and had punched at that image. As a result, Meckler was evaluated by two mental health professionals prior to trial for their opinions on whether, at the time of the incident, he had the capacity to act purposely and knowingly. Meckler told the State's psychiatrist, Dr. William Stratford, that Penrod's "shape changed," he had experienced "mind meshing," and that voices compelled him to strike her. Dr. Stratford opined that Meckler "would have had the capacity to act either knowingly or purposefully (that being his conscious object to attack)" at the time of the incident, but that Meckler's "ability to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law may have been vastly compromised due to his mental illness, which was not medicated at that point."

¶7    Similarly, the psychologist who evaluated Meckler on his own behalf, Dr. Robert Shea, observed that when Meckler failed to take his medication he "has a history of experiencing a range of psychotic symptoms to include hallucinations, delusions, confusion, aggressive behavior, ideas of reference, suicide ideation and behavior, disorganized speech and behavior, flat or inappropriate affect, anger and paranoia." It was Dr. Shea's opinion that Meckler "does have a mental disease that clearly affects his judgment and causes him to respond to paranoid ideation in a delusional manner." Although Dr. Shea testified at trial that he did not believe Meckler was "responsible for

4

his actions" when he struck Penrod, Dr. Shea did not specifically state, in his report or at trial, whether he believed Meckler acted purposely or knowingly. Moreover, Dr. Stratford cast doubt on whether Meckler was actually delusional at the time he attacked Penrod. For one thing, Meckler had provided three different accounts of what he saw before attacking Penrod. Dr. Stratford observed: "Well, I would expect [the delusional belief] to be consistent; and if not, I would have to answer the question of why wasn't it consistent. If the stories change, what's behind that? And it seems to change." According to Dr. Stratford, there was enough distortion in how Meckler described what he was experiencing "that you would not trust what he was saying." In addition, both mental health professionals commented on Meckler's high intelligence and the fact that it would enable Meckler to fabricate his experiences and symptoms more easily.

¶8 Meckler was found to be competent to stand trial, after which the District Court found Meckler guilty of aggravated assault, necessarily including the element of acting purposely or knowingly. However, the District Court also found that at the time of the commission of the offense Meckler was suffering from a mental disease or defect, and therefore, at sentencing, committed Meckler to the Montana Department of Public Health and Human Services (DPHHS) for the remainder of his life. Meckler appeals.

**STANDARD OF REVIEW**

¶9 Our standard of review is whether, viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found Meckler guilty of

5

aggravated assault beyond a reasonable doubt. *State v. Cowan*, 260 Mont. 510, 512, 861 P.2d 884, 885-86 (1993) (citing *State v. Bower*, 254 Mont. 1, 6, 833 P.2d 1106, 1110 (1992)).

**DISCUSSION**

¶10 A conviction for the offense of aggravated assault requires proof beyond a reasonable doubt that the defendant purposely or knowingly caused serious bodily injury to another. Section 45-5-202(1), MCA (2005). Meckler concedes that he struck Penrod in the face and that she suffered serious bodily injury as a result. However, Meckler argues that because he "lacked the ability to conform his conduct to the requirements of the law," *see* § 46-14-311, MCA (2005), he could not be found guilty of aggravated assault. Meckler confuses the applicability of a mental disease or defect to a guilty finding with the applicability of a mental disease or defect at sentencing.

¶11 There is no dispute that Meckler suffered from a mental disease or defect, as that term is defined in § 46-14-101(2), MCA (2005), at the time he committed the offense charged. Both of the mental health professionals who examined Meckler agreed that he suffered from paranoid schizophrenia and had not been taking his medication. "Evidence that the defendant suffered from a mental disease or defect . . . is admissible to prove that the defendant did or did not have a state of mind that is an element of the offense." Section 46-14-102, MCA (2005). In this case, the mental state required for aggravated assault is "purposely or knowingly," § 45-4-202(1), MCA, so Meckler was permitted to

6

introduce evidence that his paranoid schizophrenia prevented him from acting with purpose or knowledge. However, we have observed that "[t]he Montana legislature has made a conscious decision to hold individuals who act with a proven criminal state of mind accountable for their acts, regardless of motivation or mental condition." *Cowan*, 260 Mont. at 517, 861 P.2d at 889 (quoting *State v. Korell*, 213 Mont. 316, 333, 690 P.2d 902, 1002 (1984)). "The existence of a mental disease or defect in a person does not necessarily preclude the person from acting purposely or knowingly." *Cowan*, 260 Mont. at 514, 861 P.2d at 887.

¶12    "[A] person acts purposely with respect to a result or to conduct described by a statute defining an offense if it is the person's conscious object to engage in that conduct or to cause that result. . . ." Section 45-2-101(65), MCA (2005). "[A] person acts knowingly with respect to conduct . . . when the person is aware of the person's own conduct . . . . A person acts knowingly with respect to the result of conduct . . . when the person is aware that it is highly probably that the result will be caused by the person's conduct." Section 45-2-101(35), MCA (2005). In other words, if it was Meckler's conscious object to strike Penrod in the face, or if he was aware at the time he did so that it was highly probable that doing so would cause Penrod serious bodily injury, then for purposes of satisfying the mental state element of the charged offense, it was irrelevant whether, as Meckler contends, he was able to "conform his actions to the requirements of the law."

¶13    Contrary to Meckler's assertion, the question of whether a defendant is able to "appreciate the criminality of the defendant's behavior or to conform the defendant's behavior to the requirements of the law" is relevant only at sentencing. Section 46-14-311, MCA. If a district court finds that a defendant suffers from a mental disease or defect which renders the defendant unable to "appreciate the criminality of the defendant's behavior or to conform the defendant's behavior to the requirements of the law," the court must "sentence the defendant to be committed to the custody of the director of the [DPHHS]"—rather than to the Department of Corrections or Montana State Prison—for treatment. Section 46-14-312(2), MCA (2005). In the present case, although the District Court concluded at trial that Meckler had acted purposely or knowingly and was therefore guilty of aggravated assault, it also concluded that Meckler came within the parameters of § 46-14-311, MCA, and accordingly sentenced him to the DPHHS. These conclusions are not inconsistent.

¶14    The facts in the present case are similar to those in *Cowan*, in which we reaffirmed the constitutionality of the current statutory scheme regarding mental disease or defect. In *Cowan*, the defendant broke into a United States Forest Service Cabin and assaulted the occupant with a tree-planting tool, causing her serious bodily injury. *Cowan*, 260 Mont. at 513, 861 P.2d at 885. At his bench trial on charges of aggravated burglary and attempted deliberate homicide, Cowan argued that he did not act purposely or knowingly, citing evidence that for many years he had suffered from paranoid schizophrenia and was

8

acting very erratic during the attack. Two psychologists—one appearing on behalf of Cowan and the other on behalf of the State—testified there was a reasonable possibility that Cowan was suffering from a psychotic episode at the time of the incident. *Cowan*, 260 Mont. at 513, 861 P.2d at 886. However, there was also some concern that Cowan had exaggerated his symptoms, and the experts testified that they "could not determine with certainty whether Cowan was in the midst of a psychotic episode at the time of the attack." *Cowan*, 260 Mont. at 513-14, 861 P.2d at 886. After reviewing the record and viewing the evidence in a light most favorable to the prosecution, we concluded "that a rational trier of fact could have found beyond a reasonable doubt that Cowan possessed the requisite mental state to be convicted of the crimes with which he was charged." *Cowan*, 260 Mont. at 515, 861 P.2d at 887.

¶15 As a preliminary matter, it is important to note that the weight of the evidence and the credibility of witnesses are within the province of the trier of fact, and we will not disturb a district court's resolution of those issues on appeal. *State v. Duncan*, 2008 MT 148, ¶ 45, 343 Mont. 220, ¶ 45, 183 P.3d 111, ¶ 45. Here, the District Court found credible Dr. Stratford's opinion that Meckler "had the capacity to act either knowingly or purposely" despite his mental disease, and, viewed in a light most favorable to the prosecution, the evidence presented supported the District Court's conclusion. Like the defendant in *Cowan*, Dr. Stratford raised a question of whether Meckler was being truthful in reporting his symptoms, and noted that Meckler's changing stories and his

9

lucid conversations with members of the public and law enforcement immediately prior to and following the incident were inconsistent with delusional beliefs or a psychotic episode.

¶16 Furthermore, all of Meckler's various explanations as to why he struck Penrod involved a conscious intent to cause another person serious bodily injury, regardless of whether the victim Meckler saw before him was Penrod or someone else. Indeed, whether Meckler struck Penrod because he thought she hit him first, or because he thought she was a 6'10" apparition of his ex-wife, or because he heard voices compelling him to do so, the definitions of "purposely" and "knowingly" simply require that Meckler intended to strike at the victim in front of him and/or should have expected serious bodily injury if he did so. Sections 45-2-101(35) and (65), MCA. The District Court did not, as Meckler contends, find Meckler guilty of acting purposely or knowingly simply because he engaged in a volitional act. Rather, the District Court concluded that Meckler's volitional act was done purposely or knowingly, and therefore found him guilty of aggravated assault. The evidence before the District Court supports that conclusion.

¶17 Affirmed.

/S/ JIM RICE

We concur:

/S/ JOHN WARNER
/S/ BRIAN MORRIS
/S/ PATRICIA COTTER
/S/ JAMES C. NELSON

10