DA 06-0678

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 370

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

DAVID WENDLER,

      Defendant and Appellant.


APPEAL FROM:    District Court of the Third Judicial District,
In and For the County of Anaconda-Deer Lodge, Cause No. DC 06-13
Honorable Ted L. Mizner, Presiding Judge


COUNSEL OF RECORD:

      For Appellant:

      Walter M. Hennessey; Hennessey Law Office, Butte, Montana

      For Appellee:

      Hon. Mike McGrath, Montana Attorney General; Barbara C. Harris,
Assistant Attorney General, Helena, Montana


                              Submitted on Briefs:  August 29, 2007

                                      Decided:  November 10, 2008


Filed:

              _____
                           Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1      After a bench trial in the Third Judicial District Court, Deer Lodge County, David Wendler was convicted of hunting during a closed season and possessing an unlawfully killed game animal. Wendler appeals. We affirm.

¶2      The issues are:

¶3      1. Did the District Court err in denying Wendler's motions "for a judgment of acquittal" which was based on the State of Montana not presenting sufficient evidence to corroborate the testimony of his alleged accomplice?

¶4      2. Did the District Court err by adopting the State's proposed findings of fact and conclusions of law?

## BACKGROUND

¶5      In July of 2005, the State of Montana charged Wendler with two misdemeanor violations—hunting a black bear during a closed season, and possessing the unlawfully killed bear. Wendler owned the Sundance Lodge near Wise River, Montana, and the charges stemmed from the killing of a black bear there in early September of 2002. A jury in the Deer Lodge County Justice Court found Wendler guilty of both offenses. Wendler appealed to the District Court, where he was tried de novo.

¶6      Marsha Sackett was the State's first witness at trial. She testified that she and her husband, James Sackett, lived at the Lodge and that he was employed there as a wrangler beginning in August of 2002. They were aware that a black bear had been observed in the area for the past several weeks. Marsha further testified that she and James were watching a

2

movie in their cabin one evening between 9 and 10 p.m. when they heard a gunshot. James went outside to see what was going on and, later that night, Marsha went up to the Lodge's mechanic shop and saw the bear's carcass.

¶7 James Sackett testified next. He stated that when he went outside after he and his wife heard the gunshot, he met David Wendler. Wendler was holding a 30-30 rifle in his hand, no one else was around and Wendler stated he had shot the bear. James testified that when Wendler walked off to find the bear, he followed in a pickup to provide some light. They found the bear lying on the ground about 100 yards away; the bear was dead. With the help of two other Lodge employees, they field-dressed the animal, put it in the back of the pickup and took it into the Lodge's mechanic shop. During this testimony, the State introduced into evidence a photograph which James identified as depicting himself, Wendler and the two other Lodge employees posing with the bear hanging in the shop.

¶8 James further testified that, the following morning, Wendler asked him to get a hunting tag for the bear. Wendler's hunting license had been suspended and James agreed to get the tag to help Wendler avoid trouble. After completing a required online hunting license test, James bought a hunting license on the last day bear licenses were issued for that season. He testified the Lodge's manager subsequently called the Montana Department of Fish, Wildlife and Parks (FWP) and asked for a game warden to come out to the Lodge to inspect the bear that had been shot. When Game Warden Regan Dean came to the Lodge a few days later, James met with him, showed him the bear skin and the bear meat and head in the freezer, and told Dean he had shot the bear. James testified that, while his memory of the

3

specific dates of these events was foggy, he was certain of the sequence in which they occurred.

¶9 James testified that, several years later, when he no longer worked for Wendler or lived at the Lodge, Dean located him and asked him if he had, in fact, shot that bear. James said Dean stated he "ha[d] it on good authority" that James did not shoot the bear. At that point, James admitted to Dean that Wendler, not he, shot the bear.

¶10 Dean was the State's final witness. He testified that, on September 16, 2002, he went to the Lodge in his capacity as a FWP game warden to inspect the bear. Dean testified James claimed to have shot the bear, the tag on the bear indicated it had been killed on September 12, 2002, and everything appeared legitimate at that time. A year and a half later, individuals telephoned FWP and reported that the bear Dean had inspected for James actually had been shot by Wendler. Dean then located James, who confirmed that Wendler had shot the bear.

¶11 Dean authenticated an FWP computer printout for admission into evidence. The computer printout showed that James passed the black bear hunting test—required before issuance of a license to hunt bear—on September 5, 2002 at 10:23 a.m. Dean further testified that any bear shot before September 6 in the 2002 calendar year, or at any time other than during daylight hours, would have been shot outside the legal hunting season.

¶12 Wendler testified on his own behalf. He told the court he was present at the Lodge when the bear was killed, but did not see the shooting. According to Wendler, James said he had shot the bear out near the hay meadow and asked Lodge staff to help him retrieve the

carcass and hang it in the shop so he could dress it. Wendler denied having anything to do with shooting the bear or asking James to get a license or a bear tag.

¶13 Wendler appeals from the judgment entered against him after his bench trial in the District Court.

ISSUE 1

¶14 **Did the District Court err in denying Wendler's motions "for a judgment of acquittal" which were based on the State not presenting sufficient evidence to corroborate the testimony of his alleged accomplice?**

¶15 Wendler moved "for a judgment of acquittal" at the close of the State's case and renewed that motion at the end of trial. A motion for a judgment of acquittal is not cognizable in Montana; we deem such a motion a motion to dismiss for insufficient evidence. *See State v. McWilliams*, 2008 MT 59, ¶¶ 36-37, 341 Mont. 517, ¶¶ 36-37, 178 P.3d 121, ¶¶ 36-37. We review de novo the denial of a motion to dismiss for insufficient evidence, to determine whether there is sufficient evidence to convict. *State v. Swann*, 2007 MT 126, ¶ 19, 337 Mont. 326, ¶ 19, 160 P.3d 511, ¶ 19.

¶16 Wendler contends James was legally accountable for—or an accomplice to—the charges filed against him. He further contends the District Court erred in denying his motions because the evidence corroborating James' testimony was insufficient.

¶17 A person is legally accountable for an offense committed by another when, either before or during the commission of the offense, and with the purpose to promote or facilitate commission of the offense, he solicits, aids, abets, agrees or attempts to aid the other person in planning or committing the offense. Section 45-2-302(3), MCA. A person may not be

found guilty of an offense on the testimony of someone legally accountable for the same offense unless that testimony is corroborated by other evidence which, in itself, tends to connect the defendant with the commission of the offense. Section 46-16-213, MCA. Such corroborating evidence need not be sufficient to support a conviction or to make out a prima facie case against the defendant, however. Nor is corroborating evidence insufficient merely because it is circumstantial, disputed or possibly consistent with innocent conduct. *State v. Torgerson*, 2008 MT 303, ¶ 26, 345 Mont. 532, ¶ 26, 192 P.3d 695, ¶ 26 (citations omitted).

¶18 Section 87-3-104, MCA, defines the offense of unlawful hunting of a game animal during a closed season, with which the State charged Wendler. No evidence was presented that James was legally accountable for Wendler's hunting of the bear by soliciting, aiding, abetting, agreeing or attempting to aid Wendler in the planning or commission of shooting the bear. Therefore, no accomplice issue was raised as to Wendler's conviction of hunting during a closed season. We conclude the District Court correctly determined no corroborating evidence was required on the unlawful hunting charge.

¶19 Section 87-3-111, MCA, defines the second offense at issue here, the unlawful possession of all or part of an unlawfully killed game animal. Possession is defined at § 45-2-101(59), MCA, as knowing control of anything for a sufficient time to be able to terminate control. James testified he helped Wendler move and field dress the bear, and showed it to Dean for the FWP inspection. The District Court concluded, and we agree, that James was legally accountable for the offense of unlawful possession. Thus, § 46-16-213, MCA, required corroboration of his testimony.

¶20    James' testimony that Wendler, not he, shot the bear was corroborated by Marsha's testimony that both she and James were in their cabin when they heard a gunshot, and that she later saw the dead bear in Wendler's shop.  James' testimony about the chronology of events was corroborated by the records Dean produced that James passed the online bear hunting test and obtained his 2002 bear hunting license on September 5, 2002, and by Dean's testimony that the opening date of the 2002 hunting season was September 6.   Finally, James' testimony that Wendler possessed the bear was corroborated by the photograph of Wendler, James and two other Lodge employees with the bear carcass, as well as by Dean's testimony that he inspected the meat and the bear's head in the freezer at the Lodge owned by Wendler.  We conclude sufficient corroborating evidence was presented tending to connect Wendler with the offense of possession of an unlawfully killed game animal.

¶21    We hold the District Court did not err in denying Wendler's motions to dismiss.

ISSUE 2

¶22    **Did the District Court err by adopting the State's proposed findings of fact and conclusions of law?**

¶23    Wendler contends the District Court erred by adopting the State's proposed findings of fact and conclusions of law in its Opinion and Order, without exercising independent judgment.  He advances jurisprudence such as *In re Marriage of Kukes*, 258 Mont. 324, 328, 852 P.2d 655, 657 (1993), in which we determined the trial court erred by accepting one party's findings of fact and conclusions of law without making findings sufficient to support its modification of child support.  We observe that Wendler does not specifically challenge any particular findings or conclusions made by the District Court as being insufficiently

7

supported by the evidence, incorrect as a matter of law or otherwise indicating a lack of independent analysis or judgment.

¶24 We have disapproved the wholesale adoption of one party's proposed findings and conclusions. We also have acknowledged, however, that a court may adopt proposed findings or conclusions so long as they are supported by the evidence and law of the case. *See Norwood v. Service Distributing, Inc.*, 2000 MT 4, ¶ 39, 297 Mont. 473, ¶ 39, 994 P.2d 25, ¶ 39 (citations omitted). We review findings of fact in a criminal case to determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty of the offense beyond a reasonable doubt. *State v. Meckler*, 2008 MT 277, ¶ 9, 345 Mont. 302, ¶ 9, 190 P.3d 1104, ¶ 9 (citations omitted). We review conclusions of law to determine whether they are correct. *State v. Stucker*, 1999 MT 14, ¶ 15, 293 Mont. 123, ¶ 15, 973 P.2d 835, ¶ 15 (citation omitted).

¶25 In this case, witness credibility—a question within the trial court's province as the factfinder in this case—was critical. *See Meckler*, ¶ 15 (citation omitted). In its written Opinion and Order, the District Court concluded James' testimony was credible and worthy of belief and that, when combined with the other corroborating evidence, it was sufficient to prove the charges against Wendler. The court then stated it would adopt the State's proposed findings of fact and conclusions of law. Having reviewed the evidence, we determine that a rational trier of fact could have found Wendler guilty of the charged offenses beyond a reasonable doubt, and the District Court's conclusions of law are correct. Wendler has established no error.

¶26    Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE