STATE of Utah, Plaintiff and Appellee,

v.

Aaron G. MACE, Defendant and Appellant.

No. 930509.

Supreme Court of Utah.

July 26, 1996.

Jan Graham, Att'y Gen., Frederic J. Voros, Jr., Asst. Att'y Gen., James M. Cope, Salt Lake City, for plaintiff.

Joseph C. Fratto, Jr., Salt Lake City, for defendant.

ZIMMERMAN, Chief Justice:

Aaron G. Mace appeals his conviction and sentence for rape and aggravated robbery, both first degree felonies. Mace contends that Utah's insanity defense, as codified in section 76–2–305 and in other related sections of the Utah Code, violates state and federal constitutional prohibitions against cruel and unusual punishment. We reject Mace's contentions and affirm his conviction and sentence.

On December 2, 1992, Mace knocked on the door of a woman's apartment to tell her that someone was tampering with her car. After entering the apartment, Mace began to tell the woman about car alarms and then asked to use her bathroom. After about ten minutes, Mace came out of the bathroom wearing rubber gloves and holding a knife and a roll of duct tape. He threatened the woman with the knife and tied her hands behind her back with the tape. He then took the woman into her bedroom and raped her. After the rape, Mace forced the woman into her car at knife point and then drove her to her bank to have her withdraw $100 for him. The victim sped off in her car after Mace left the car to make a phone call. Mace confessed to police on the following day. He was subsequently charged with four first degree felonies: rape, aggravated sexual assault, aggravated kidnaping, and aggravated robbery.

On January 27, 1993, Mace filed a notice of his intent to rely on a defense of diminished capacity or insanity, pursuant to section 77–14–3 of the Utah Code. On June 7, 1993, he entered a plea of not guilty on each of the four counts. One week later, he moved to amend his plea to "not guilty or in the alternative not guilty by reason of insanity" and filed a lengthy motion challenging, on due process and cruel and unusual punishment grounds, the constitutionality of the statutory scheme codifying Utah's insanity defense.

At a hearing on the motions on July 1, 1993, Dr. Gillett, the clinical director of Utah State Hospital's forensic unit, testified that Mace suffered from the ego dystonic form of obsessive compulsive paraphilia. The doctor explained that the disorder includes a compulsive, uncontrollable need to have excessive sexual intercourse, even though the patient

does not want to do so. Patients "try all kinds of means to stop doing it but usually it builds up and builds up until it becomes what [is] called an irresistible impulse." On cross-examination, Dr. Gillett testified that Mace "obviously had intent" and "obviously knew [his forced sexual intercourse with the victim] was wrong," but that Mace was unable to conform his conduct to the law.

On the basis of Dr. Gillett's testimony, the trial court allowed Mace to change his plea to not guilty by reason of insanity. The next day, the trial court issued an unsigned minute entry in which it denied Mace's constitutional challenges without specifying the reasons for the denial, and directed the prosecution to prepare a formal order on the denial.

At a second hearing on July 19th, the trial court granted Mace's subsequent motion to amend his plea to "guilty and mentally ill," conditioned on Mace's right to appeal the court's adverse ruling on his constitutional challenges, pursuant to rule 11(i) of the Utah Rules of Criminal Procedure.[1] The prosecution agreed to drop the sexual assault and kidnaping charges for the purposes of the plea agreement. Mace, his attorney, the prosecutor, and the trial judge each signed the plea agreement that same day.

On August 2nd, two weeks after Mace entered the conditional guilty plea, the trial court signed findings of fact and conclusions of law regarding the court's earlier denial of Mace's constitutional challenges. The court denied Mace's due process claims on the merits but ruled that Mace had no standing to challenge Utah's sentencing scheme for the mentally ill because he had not established that he was subject to the challenged statutes. Although this ruling may have been correct at the time of the July 1st hearing on the constitutional issues, it was obviously incorrect at the time it was signed because Mace had by then pleaded guilty and

mentally ill, thus making him subject to the challenged statutes.

The trial court subsequently sentenced Mace to two concurrent five-to-life terms and later found that Mace qualified for the status of guilty and mentally ill. Accordingly, the court ordered Mace committed to the Department of Human Services for care and treatment until his transfer to the Utah Department of Corrections, pursuant to sections 77–16a–203 and –204 of the Code.

■ Mace duly appealed to this court, claiming that (i) the conditional plea properly reserved his right to appeal the constitutional issues, even though they were nondispositive of his case, and (ii) Utah's statutory scheme violated federal and state due process requirements. Pursuant to the parties' stipulation, this court stayed the briefing pending our resolution of two other cases then on appeal. As anticipated, our holding in *State v. Montoya,* 887 P.2d 857, 860 (Utah 1994)—that an issue reserved on a conditional plea need not be dispositive of the prosecution—fully disposes of Mace's first issue and dictates that Mace's conditional plea was proper. Similarly, our opinion in *State v. Herrera,* 895 P.2d 359, 363–68 (Utah 1995), rejected the identical due process claims that Mace raised in his initial brief and thus defeats Mace's due process challenge.

Following the *Herrera* decision, the State moved for summary affirmance of the trial court. However, we granted leave for Mace to supplement his brief with a claim that punishing him violated constitutional prohibitions against cruel and unusual punishment. That is the only claim we address in this opinion. Because the claim implicates the constitutionality of the statutory scheme codifying Utah's insanity defense, we grant no deference to the trial court in our review of its legal conclusions. *State v. James,* 819 P.2d 781, 796 (Utah 1991); *see also State v. Pena,* 869 P.2d 932, 938–39 (Utah 1994).

---

1. Rule 11(i) provides:
   With approval of the court and the consent of the prosecution, a defendant may enter a conditional plea of guilty, guilty and mentally ill, or no contest, reserving in the record the right, on appeal from the judgment, to a review of the adverse determination of any specified pretrial motion. A defendant who prevails on appeal shall be allowed to withdraw the plea. Utah R.Crim. P. 11(i).

■ As a preliminary matter, the State claims that Mace waived his right to challenge Utah's sentencing scheme for the mentally ill because after the trial court ruled that Mace lacked standing to assert the challenge, he failed to renew the challenge at or after his sentencing. We reject this argument. Mace properly preserved the right to appeal the trial court's adverse ruling on his cruel and unusual punishment claim at the time he entered his conditional plea. We note that Mace entered his conditional plea on the basis of the trial court's unsigned minute entry before the trial court had issued its findings of fact and conclusions of law. Ordinarily, an unsigned minute entry lacks the finality to constitute an appealable order. *Ron Shepherd Ins., Inc. v. Shields,* 882 P.2d 650, 652 (Utah 1994). Logically, it would seem that an unsigned minute entry likewise could not constitute a sufficient "adverse determination" for the purposes of a rule 11(i) conditional plea. However, in light of the fact that the conditional plea agreement was signed by the trial judge, the prosecutor, Mace, and his attorney, the agreement itself reflected a consensus that the unsigned minute entry was a sufficient "adverse determination" for a rule 11(i) plea and a consensus to preserve the merits of Mace's constitutional issues for appeal. Applying the concept of waiver in these circumstances would utterly defeat the purpose of conditional pleas, which is to avoid the pointless and wasteful exercise of " 'forcing the parties to go through an entire trial merely to preserve the ... issue.' " *Montoya,* 887 P.2d at 859 (quoting *State v. Sery,* 758 P.2d 935, 939 (Utah Ct.App.1988)). We therefore conclude that Mace did not waive his cruel and unusual punishment claim.

■ We now address the merits of Mace's claim. He challenges section 76–2–305 of the Utah Code, which provides in pertinent part:

(1) It is a defense to a prosecution under any statute or ordinance that the defendant, as a result of mental illness, lacked the mental state required as an element of the offense charged. Mental illness is not otherwise a defense.

Utah Code Ann. § 76–2–305(1). As we have previously explained, this statute limits the insanity defense to negating the mens rea necessary for conviction. *See Herrera,* 895 P.2d at 361–62; *State v. Young,* 853 P.2d 327, 383–84 (Utah 1993) (opinion of Durham, J.). As a result, the statute allows for the conviction of those who have the requisite mens rea, even though they may not appreciate the wrongfulness of their conduct or are unable to control their conduct. Mace claims that punishing such offenders is cruel and unusual, in violation of the Eighth Amendment[2] to the United States Constitution and article I, section 9[3] of the Utah Constitution.

■ We decline to undertake a state constitutional analysis of Mace's claim because he "does not argue that the analysis of this issue under the Utah Constitution would be different from its analysis under the federal constitution.... This Court will not engage in constructing arguments out of whole cloth...." *State v. Lafferty,* 749 P.2d 1239, 1247 & n. 5 (Utah 1988), *habeas corpus granted on other grounds, Lafferty v. Cook,* 949 F.2d 1546 (10th Cir.1991), *cert. denied,* 504 U.S. 911, 112 S.Ct. 1942, 118 L.Ed.2d 548 (1992); *accord Parsons v. Barnes,* 871 P.2d 516, 519 n. 2 (Utah), *cert. denied,* —— U.S. ——, 115 S.Ct. 431, 130 L.Ed.2d 344 (1994). Mace has not separately briefed his state constitutional claim, and we do not reach it.

■ Turning to Mace's federal claim, we note that Mace does not specify whether he is challenging section 76–32–305 on its face or as it applies to him. We will first address

---

**2.** That amendment provides:

Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

U.S. Const. amend. VIII.

**3.** That section provides:

Excessive bail shall not be required; excessive fines shall not be imposed; nor shall cruel and unusual punishments be inflicted. Persons arrested or imprisoned shall not be treated with unnecessary rigor.

Utah Const. art. I, § 9.

the constitutionality of the statute as it applies to Mace. This is consistent with the approach we have taken in other contexts in which a statute was challenged on constitutional grounds. *See Greenwood v. City of North Salt Lake*, 817 P.2d 816, 820 (Utah 1991) ("'A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law.'" (quoting *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982))). This approach is also consistent with our stated preference to examine the contours and limitations of Utah's cruel and unusual punishment clause on a "case-by-case basis." *State v. Bishop*, 717 P.2d 261, 267 (Utah 1986).

■ A criminal punishment may be cruel and unusual when it is barbaric, excessive, or disproportional[4] to the offense committed. *Solem v. Helm*, 463 U.S. 277, 284, 103 S.Ct. 3001, 3006–07, 77 L.Ed.2d 637 (1983); *Andrews v. Morris*, 607 P.2d 816, 824 (Utah), *cert. denied*, 449 U.S. 891, 101 S.Ct. 254, 66 L.Ed.2d 120 (1980); *see also State v. Carter*, 888 P.2d 629, 656–57 (Utah), *cert. denied*, —— U.S. ——, 116 S.Ct. 163, 133 L.Ed.2d 105 (1995). Mace does not claim that his particular punishment was barbaric, excessive, or disproportional; rather, he argues that imposing *any* punishment on mentally ill but not legally insane offenders like himself is cruel and unusual.

■ This court has already held that a defendant who does not qualify as legally insane under the Utah statutory scheme may be charged, tried, and convicted without offending state or federal due process and equal protection guarantees. *Herrera*, 895 P.2d at 363–69. It would be anomalous, if not irrational, for this court to hold, as we did in *Herrera*, that the legislature can constitutionally hold such defendants accountable for their criminal conduct but cannot constitutionally impose any punishment on such defendants. As we said in the analogous context of a broad challenge on Eighth Amendment grounds to Utah's death penalty:

> "[I]n assessing a punishment selected by a democratically elected legislature against the constitutional measure, we presume its validity. We may not require the legislature to select the least severe penalty possible so long as the penalty selected is not cruelly inhumane or disproportionate to the crime involved. And a heavy burden rests on those who would attack the judgment of the representatives of the people.
>
> This is true in part because the constitutional test is intertwined with an assessment of contemporary standards and the legislative judgment weighs heavily in ascertaining such standards. '[I]n a democratic society legislatures, not courts, are constituted to respond to the will and consequently the moral values of the people.'"

*Andrews*, 607 P.2d at 824 (second alteration in original) (quoting *Gregg v. Georgia*, 428 U.S. 153, 175, 96 S.Ct. 2909, 2926, 49 L.Ed.2d 859 (1976) (quoting *Furman v. Georgia*, 408 U.S. 238, 383, 92 S.Ct. 2726, 2801, 33 L.Ed.2d 346 (1972) (Burger, C.J., dissenting))); *see also Harmelin v. Michigan*, 501 U.S. 957, 998, 111 S.Ct. 2680, 2703, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring in part and concurring in the judgment) (noting that fixing of criminal sentences involves "substantive penological judgment" that is province of legislature, not courts). Thus, absent a showing that a particular punishment is "cruelly inhumane or disproportionate," *Andrews*, 607 P.2d at 824, we are not apt to substitute our judgment for that of the legislature re-

---

4. We note that two sitting justices of the United States Supreme Court have articulated the view that the Eighth Amendment does not embody a proportionality requirement for sentences in noncapital cases, *see Harmelin v. Michigan*, 501 U.S. 957, 961–94, 111 S.Ct. 2680, 2683–2701, 115 L.Ed.2d 836 (1991) (opinion of Scalia, J.), and that three other justices would forbid only sentences that are "grossly disproportionate" to the crime committed. *Id.* at 1001, 111 S.Ct. at 2705 (Kennedy, J., concurring in part and concurring in the judgment). Our use of the term "disproportional" in the text is not meant to express any view on the status of this evolving jurisprudence, nor is the meaning of the term at issue in the present case.

garding the wisdom of a particular punishment or of an entire sentencing scheme. *See Bishop,* 717 P.2d at 269; *cf. Herrera,* 895 P.2d at 362–63 (discussing legislative responsibility for determining accountability for criminal acts).

■ Mace has failed to demonstrate how his particular punishment is cruelly inhumane or disproportionate to the crime involved. The undisputed evidence as reflected in Dr. Gillett's testimony demonstrates, at best, that Mace was unable to control his conduct because he was subject to an irresistible impulse. The evidence also demonstrates that despite his illness, Mace was able to appreciate the wrongfulness of his conduct. In that factual context, we reject Mace's claim that punishing him for conduct that he was unable to control constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.

■ First, the Supreme Court has specifically held that "adoption of the irresistible impulse test is not 'implicit in the concept of ordered liberty.'" *Leland v. Oregon,* 343 U.S. 790, 801, 72 S.Ct. 1002, 1009, 96 L.Ed. 1302 (1952) (quoting *Palko v. Connecticut,* 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937)). As noted above, we see no general constitutional impediment to punishing a defendant who can be constitutionally charged, tried, and convicted for conduct resulting from an irresistible impulse, in the absence of a showing that a specific punishment imposed on a defendant is cruelly inhumane or disproportionate. This conclusion is in accord with the views of the supreme courts of Montana and Idaho, the two other states which have adopted the mens rea approach to the insanity defense. *See State v. Cowan,* 861 P.2d 884, 888–89 (Mont.1993), *cert. denied,* —— U.S. ——–——, 114 S.Ct. 1371–72, 128 L.Ed.2d 48 (1994); *State v. Korell,* 213 Mont. 316, 690 P.2d 992, 1001–02 (1984); *see also State v. Winn,* 121 Idaho 850, 828 P.2d 879, 882–83 (1992) (noting that "the absence of an insanity defense . . . does not violate any constitutional protections").

■ Second, and independently, Mace was not insane under the M'Naghten rule, which is followed by a majority of states. *See Herrera,* 895 P.2d at 365. The M'Naghten test requires a defendant to prove that he "'was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing, or if he did know it that he did not know what he was doing was wrong.'" *Id.* at 363 n. 1 (quoting Wayne R. LaFave, *Substantive Criminal Law* 311 (1987)). Mace was not insane under this test because, in the words of Dr. Gillett, "He obviously knew [his forced sexual intercourse with the victim] was wrong." The State asserts, and our own research confirms, that no court has ever ruled that punishing someone who fails to meet the M'Naghten test constitutes cruel and unusual punishment. *See, e.g., Jackson v. Dickson,* 325 F.2d 573, 575–76 (9th Cir. 1963), *cert. denied,* 377 U.S. 957, 84 S.Ct. 1637, 12 L.Ed.2d 501 (1964); *State v. Helms,* 284 N.C. 508, 201 S.E.2d 850, 853–54 (N.C.), *cert. denied,* 419 U.S. 977, 95 S.Ct. 240, 42 L.Ed.2d 190 (1974); *State v. Myers,* 6 Wash. App. 557, 494 P.2d 1015, 1020–21 (Wash.Ct. App.), *cert. denied,* 409 U.S. 1061, 93 S.Ct. 562, 34 L.Ed.2d 513 (1972).

Finally, Mace received a verdict of "guilty and mentally ill" ("GAMI") pursuant to sections 77–16a–103 and –104 of the Utah Code. The GAMI verdict "buffers some of the harsher consequences of eliminating an independent insanity defense" by allowing for medical treatment in place of or as a prelude to traditional incarceration. *Herrera,* 895 P.2d at 367. Mace has utterly failed to brief or demonstrate how this form of punishment is barbaric, excessive, or disproportionate to the offenses he committed. In our view, the GAMI verdict is an improved and compassionate form of punishment for offenders like Mace who cannot meet the M'Naghten test for legal insanity. This is because such offenders would be subject to traditional incarceration under a M'Naghten regime that lacks the availability of a GAMI verdict.

For the foregoing reasons, we hold that Mace was not subjected to unconstitutional

cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.

We decline to reach Mace's broader argument that the statutory scheme is constitutionally infirm because it punishes those who cannot appreciate the wrongfulness of their conduct. Those facts are not present in this case, and we hold that Mace lacks standing to assert such a broad facial challenge. We first note that standing rules are a matter of state procedural law. *Provo City Corp. v. Willden*, 768 P.2d 455, 456–58 (Utah 1989). This court has previously outlined a three-step inquiry in reviewing the question of a complainant's standing to sue. *Jenkins v. Swan*, 675 P.2d 1145, 1150 (Utah 1983); *accord National Parks & Conservation Ass'n v. Board of State Lands*, 869 P.2d 909, 913 (Utah 1993). The first step of the inquiry is directed to ascertaining the complainant's personal stake in the controversy: "One who is not adversely affected has no standing. A mere allegation of an adverse impact is not sufficient. There must also be some causal relationship alleged between the injury to the [complainant], the governmental actions and the relief requested." *Jenkins*, 675 P.2d at 1150. If the complainant satisfies this first requirement, he or she will be granted standing and no further inquiry is required. *Id.*

If the complainant cannot satisfy the first requirement, then we will move to the second step of determining whether anyone else would have a "more direct interest in the issues who can more adequately litigate the issues." *Id.* If the complainant cannot meet the first step and if there are no better litigants under the second step, then we will move to the third step, which is "to decide if the issues raised by the [complainant] are of sufficient public importance in and of themselves to grant ... standing." *Id.; see also National Parks*, 869 P.2d at 913.

Under the first step of the standing inquiry, it is evident that Mace has no personal stake in his claim that the statutory scheme might punish people who are unable to ap-

preciate the wrongfulness of their conduct. As the facts indicate, Mace did appreciate the wrongfulness of his conduct. Therefore, there is no causal relationship between Mace, the statutory scheme, and the relief requested. Even if we were to hold, which we do not, that the State is precluded from punishing people who are unable to appreciate the wrongfulness of their conduct, that form of relief would be utterly unhelpful to Mace.

Moving to the second step of the standing inquiry, it is also evident that there are more appropriate litigants to pursue Mace's claim, namely, those individuals whose rights Mace seeks to assert: those whose mental illness made it impossible for them to appreciate the wrongfulness of their conduct.

Finally, even if we were to reach the last step of the standing inquiry, we do not find that Mace's claim raises an issue that is so important that we must decide it in the absence of a more appropriate litigant. *Cf. Provo City*, 768 P.2d at 457. Even if the statutory scheme is susceptible to unconstitutional application, it is more appropriate for us to await a litigant who may actually be harmed by such application. Deciding the issue now would have no conceivable concrete benefit to anyone.

Our ruling that Mace lacks standing is not to say that any constitutional claim must be premised solely on the application of the challenged statute to the complainant. To the contrary, we have held that some individuals have standing to mount a facial challenge to a statute under the third step in our standing inquiry—when "the constitutionally protected interests infringed by such statutes are so important that their protection need not await the perfect plaintiff." *Id.* (invalidating city ordinance which violated free speech clause of U.S. Constitution). However, it is undisputed that the statutory scheme at issue here applies only to individual defendants and does not threaten to chill or generally infringe on the rights of others. To the extent that the scheme could be claimed to specially harm certain defendants, those de-

fendants will have the opportunity to challenge it through the appeals process.[5]

We therefore decline to address Mace's facial challenge to the statutory scheme, and we affirm Mace's conviction and sentence.

HOWE and RUSSON, JJ., concur in the opinion of ZIMMERMAN, C.J.

STEWART, Associate Chief Justice, separate opinion:

The majority opinion relies on *State v. Herrera*, 895 P.2d 359 (Utah 1995), to dispose of Mace's due process challenges to Utah's abolition of the insanity defense. *See* Utah Code Ann. § 76–2–305(1). In my dissent in *Herrera*, 895 P.2d at 371–87, I pointed out that by eliminating individual moral culpability as a precondition for criminal liability, the Court shattered one of the most fundamental precepts of Anglo–American law—a precept based on moral and ethical foundations deeply embedded in the law of western civilization and in Christian–Judeo moral and ethical principles. In Utah, of all places, the basic notion that personal culpability is dependent on the concept of human free will is severely undermined. In my dissenting opinion in *Herrera*, I stated:

> Today's majority opinion and the statute it sustains represent a monumental departure from, and rejection of, one of the most fundamental principles of Anglo–American criminal law that has existed for centuries. For the first time in this state's history and, with two exceptions, for the first time in the nation's history, this Court now holds that an insane person who commits an act prohibited by the criminal law is as guilty as a sane person and may be imprisoned, and even executed, as if he were a fully responsible sane person. I submit that the Court fails to perceive the extent to which fundamental constitutional principles and values have been violated by its affirmance of Utah Code Ann. § 76–2–305(1). The decision flouts centuries-old principles of personal responsibility that

evolved from Judeo–Christian moral and ethical concepts and from an expanding knowledge of the causes of human behavior. Basic precepts of state and federal due process of law, equal protection of the law, and the cruel and unusual punishment provisions in the state and federal constitutions prohibit legislative action imposing such inhuman treatment on persons whose mental faculties are so deranged that rational, morally responsible conduct is not impossible.

895 P.2d at 371–72.

As I pointed out in that dissent, the abolition of the insanity defense, which is even more draconian and unreasonable in its flouting of fundamental ethical, legal, historical, moral, and common sense principles of fairness and justice than the approaches taken by the only two other states that have undertaken such an extreme approach, Montana and Idaho, simply disconnects the criminal law from its moorings in concepts of individual free will and moral blameworthiness.[1]

I simply cannot accede to such an extreme departure from such basic precepts of constitutional law.

It is, however, odd that the majority, which has no legal compunction against convicting morally blameless persons of malum in se crimes, apparently holds open in this case the possibility of refusing to *punish* a person who has been convicted of a crime even though he cannot know that the act for which he was convicted was wrong. In other words, a person who is morally blameless because of the loss of his ability to discern right from wrong, such as, for example, a person afflicted with Alzheimer's disease or paranoid delusions caused by chemical or hormonal imbalances in the brain that might

---

5. We are unable to understand why Justice Stewart in his dissent refers to our decision that Mace lacks standing to challenge the facial validity of the statutory scheme as a "holding" that would allow conviction but not punishment. Our opinion contains no such holding.

1. *See State v. Cowan*, 260 Mont. 510, 861 P.2d 884 (1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1371, 128 L.Ed.2d 48 (1994); *State v. Korell*, 213 Mont. 316, 690 P.2d 992 (1984); *State v. Winn*, 121 Idaho 850, 828 P.2d 879 (1992).

be corrected by pharmacological means, can be convicted but cannot be punished. The majority's holding in such a case would allow a person to be convicted of a "crime" but bar punishment for that "crime" because the person was not morally culpable for that act. That corrupts the very foundation of the criminal law as a body of normative standards that are supposed to reflect those fundamental precepts concerning the moral nature of humankind on which this nation was founded.

DURHAM, Justice, dissenting:

I cannot join the majority opinion for the reasons set forth in my dissenting opinion and the dissenting opinion of Associate Chief Justice Stewart in *State v. Herrera*, 895 P.2d 359 (Utah 1995).

I therefore respectfully dissent.