2004 UT App 326

**STATE of Utah, Plaintiff and Appellee,**

v.

**Jalal ANSARI and Shawn Patrick Lagana, Defendants and Appellants.**

**No. 20030655–CA.**

Court of Appeals of Utah.

Sept. 23, 2004.

Peter Goodall and Ronald J. Yengich, Yengich Rich & Xaiz, Salt Lake City, for Appellants.

Mark L. Shurtleff, Attorney General, and J. Frederic Voros Jr., Assistant Attorney General, Salt Lake City, for Appellee.

Before BILLINGS, P.J., BENCH, Associate P.J., and JACKSON, J.

## OPINION

JACKSON, Judge:

¶1 Appellants, Jalal Ansari and Shawn Lagana, challenge their convictions of enticing a minor over the Internet in violation of the prior version of Utah Code section 76–4–401 (2003) (amended 2003). We affirm.

## BACKGROUND

¶2 On September 30, 2002, police charged Ansari, a Utah resident, with enticing a minor over the Internet after he had allegedly used an Internet chat room to contact an undercover police officer posing as a thirteen-year-old girl. The sexually suggestive conversation concluded with an agreement to meet that night at a park in Utah. Ansari was arrested when he arrived at the agreed location.

¶3 Lagana, also a Utah resident, was charged separately on April 14, 2003 for the same offense stemming from essentially identical circumstances. All of his relevant conduct also occurred in Utah.

¶4 Ansari and Lagana both moved to dismiss the charges on grounds that the Utah Internet enticement statute, Utah Code section 76–4–401, is unconstitutional. The trial court denied their motions, and both Ansari and Lagana entered conditional guilty pleas pending the outcome of this appeal.

## ISSUES AND STANDARD OF REVIEW

¶5 On appeal, Ansari and Lagana challenge the prior enactment of the Utah Internet enticement statute on grounds that it includes fatally inconsistent terms, imposes an undue burden on interstate commerce in violation of the Commerce Clause, and is void for vagueness. "Constitutional challenges to statutes present questions of law, which we review for correctness." *Provo City Corp. v. Thompson*, 2004 UT 14,¶ 5, 86 P.3d 735 (citation omitted).

## ANALYSIS

¶6 At the time in question, the Internet enticement statute, Utah Code section 76–4–401 read as follows:

(1) A person commits enticement of a minor over the Internet when not amounting to an attempt, conspiracy, or solicitation under Section 76–4–101, 76–4–201, or 76–4–203, the person knowingly uses a computer to solicit, seduce, lure, or entice, or attempts to solicit, seduce, lure, or entice a minor or a person the defendant believes to be a minor to engage in any sexual activity which is a violation of state criminal law.

(2) It is not a defense to the crime of enticing a minor under Subsection (1), or an attempt to commit this offense, that a law enforcement officer or an undercover operative who is working with a law enforcement agency was involved in the detection or investigation of the offense.

(3) An enticement of a minor under Subsection (1) with the intent to commit:

(a) a first degree felony is a second degree felony;

(b) a second degree felony is a third degree felony;

(c) a third degree felony is a class A misdemeanor;

(d) a class A misdemeanor is a class B misdemeanor; and

(e) a class B misdemeanor is a class C misdemeanor.

Utah Code Ann. § 76–4–401 (2003). After Ansari and Lagana were charged, section 76–4–401 was amended in 2003 to remove the phrase "not amounting to an attempt, conspiracy, or solicitation under Section 76–4–101, 76–4–201, or 76–4–203." *See* Utah Code Ann. § 76–4–401(1) (Supp.2003) (amendment effective May 5, 2003).

### I. Inconsistent Terms

¶ 7 Ansari and Lagana first challenge the Utah Internet enticement statute on grounds that its terms are fatally inconsistent and thereby unconstitutional.[1] They take issue with the clause from subsection

(1), which provides that the statute applies to conduct "not amounting to an attempt, conspiracy, or solicitation under Section 76–4–101, 76–4–201, or 76–4–203." Utah Code Ann. § 76–4–401(1).

¶ 8 Their argument proceeds in two steps. They argue first that the only natural reading of "not amounting to" requires the State to affirmatively prove absence of attempt, conspiracy, or solicitation. Second, when "not amounting to" is read to require the State to disprove attempt, conspiracy, and solicitation, this requirement is fatally inconsistent with the statute's requirement that the State also prove the defendant "use[d] a computer to solicit, seduce, lure, or entice a minor." *Id.* In other words, they argue that the only natural reading of the statute requires the State to both prove and disprove the same elements.

¶ 9 We determine as an initial matter that Ansari and Lagana have standing to make this challenge because, if accepted, their reading of the statute would "establish that no set of circumstances exists under which the [statute] would be valid." *State v. Herrera*, 1999 UT 64,¶ 4 n. 2, 993 P.2d 854 (alterations in original) (quotations and citation omitted). Nonetheless, we conclude that the challenge fails for two reasons: (1) the plain language of the statute does not require the State to affirmatively prove the absence of attempt, conspiracy, and solicitation, and (2) even if it did require such proof, we would still conclude that the statute does not require the State to prove and disprove the same elements.

¶ 10 First, we hold that the "not amounting to" clause does not require the State to affirmatively prove absence of attempt, conspiracy, and solicitation. "It is a basic principle that legislative enactments are endowed with a strong presumption of validity." *State v. Mohi*, 901 P.2d 991, 1009

1. The State objects to this challenge on grounds that the constitutional effect of inconsistent terms was not properly preserved at trial. "In order to preserve an issue for appeal, it 'must be raised in a timely fashion, must be specifically raised such that the issue is sufficiently raised to a level of consciousness before the trial court, and must be supported by evidence or relevant legal authority.'" *State v. Richins*, 2004 UT App 36,¶ 8, 86 P.3d 759 (quoting *State v. Schultz*, 2002 UT App 366,¶ 19, 58 P.3d 879). In this case, we determine that Ansari and Lagana sufficiently raised the issue of inconsistent statutory terms by citing to their principal case here, *Nelson v. Salt Lake County*, 905 P.2d 872 (Utah 1995), in their arguments below.

(Utah 1995) (quotations and citations omitted). We should not strike a statute "unless there is no reasonable basis upon which [it] can be construed as conforming to constitutional requirements." *Id.* When one interpretation results in constitutional conflict, we may adopt another construction, if possible, "so long as the resulting construction does not conflict with the reasonable or actual legislative purposes of the statute." *Id.* Hence, we need not determine whether there is a single correct interpretation; we need only determine whether there exists a reasonable interpretation that avoids inconsistency.

¶ 11 Ansari and Lagana prevail only if they prove that their reading of the "not amounting clause" is the only reasonable reading. We determine it is not and rely on an alternative construction. The "not amounting to" clause can reasonably be understood to indicate the role of section 76–4–401 as an alternative to attempt, conspiracy, and solicitation, and not to require the State to first prove the absence of these crimes.

¶ 12 This reading not only avoids any unconstitutional inconsistency, but it accords with the likely purposes of the statute. In drafting section 76–4–401, the legislature was likely aware that the "not amounting to" clause has been used in other rape and attempted rape crimes and that Utah courts have consistently interpreted the clause to not require the State to affirmatively disprove other crimes. *See State v. Reed,* 2000 UT 68, ¶¶ 32–33, 8 P.3d 1025 (refusing to construe "not amounting to rape of a child, object rape of a child, sodomy upon a child, or an attempt to commit any of these crimes"

clause to require the State to disprove sodomy); *State v. Peters,* 550 P.2d 199, 199–200 (Utah 1976) (refusing to construe "not amounting to rape of a child . . . or attempted rape" clause to require the State to disprove rape); *see also State v. Montoya,* 910 P.2d 441, 444–46 (Utah Ct.App.1996) ("The primary purpose of the 'under circumstances not amounting to [rape]' language was likely to encourage criminal punishment under those greater crimes when the evidence of a particular case warrants it.") (reviewing Utah Code Ann. § 76–7–102 prohibiting incest). Given this judicial consistency, it is only natural for the legislature to expect the same interpretation to apply to the "not amounting to" language of section 76–4–401.[2]

¶ 13 In addition, the legislature was probably aware that the "not amounting to" clause would assist in preventing a challenge under *State v. Shondel,* 22 Utah 2d 343, 453 P.2d 146 (1969). In *Shondel,* the supreme court held that when two different statutory provisions define the same offense, a defendant must be sentenced under the provision carrying the lesser penalty. *See id.* at 148. Because crimes of attempt, conspiracy, and solicitation can stem from conduct providing a basis for Internet enticement, the legislature may have been legitimately concerned that the *Shondel* doctrine would allow all such crimes to be punished only as the lesser Internet enticement crime. By clarifying that Internet enticement involves conduct "not amounting to" other inchoate crimes, the legislature could distinguish Internet enticement from such crimes and thereby preserve the State's ability to seek a higher penalty when the facts permitted.[3]

---

2. *See, e.g., Masich v. U.S. Smelting, Ref., & Mining Co.,* 113 Utah 101, 191 P.2d 612, 635 (Utah 1948) (Wade, J., dissenting) ("[T]he legislature in using practically the same language [as found in a prior enactment] must be presumed to have adopted the construction which [the courts] had previously placed thereon."); *People v. Martinez,* 188 Cal.App.3d 19, 232 Cal.Rptr. 736, 740 (1986) ("It is a cardinal principle of statutory construction that where legislation is framed in the language of an earlier enactment on the same or an analogous subject, which has been judicially construed, there is a very strong presumption of intent to adopt the construction as well as the language of the prior enactment." (quotations and citation omitted)); *In Interest of Garcia,* 944

S.W.2d 725, 727 (Tex.App.1997) (holding that by using previously construed language, legislature adopted that construction as correct).

3. For example, in a case where a defendant uses the Internet to contact a minor and, upon meeting the child, is on the verge of engaging in sexual intercourse when the police arrive, the State would likely prefer to charge the defendant with attempted statutory rape rather than Internet enticement. However, under *Shondel,* the defendant could claim that the elements of attempted statutory rape and Internet enticement are similar and should only be punished according to the lesser crime, Internet enticement, a second degree felony. The "not amounting to"

¶ 14 Second, even if we were to determine that the only reasonable reading of the statute required the State to affirmatively disprove attempt, conspiracy, and solicitation, we would still conclude that section 76–4–401 does not require the State to prove and disprove the same elements. Ansari and Lagana claim that the crimes of attempt, conspiracy, and solicitation are essentially the same as Internet enticement. We disagree and conclude that there are in fact substantial differences.

¶ 15 As a prefatory matter, we note that it is rare that a statute's terms are found to be fatally inconsistent. Ansari and Lagana refer us to one case, *Nelson v. Salt Lake County*, in which the supreme court held the terms of a statute invalid because it was "patently inconsistent" and "so flawed that it is entirely inoperable." 905 P.2d 872, 876 (Utah 1995). The statute there was held invalid because it imposed contradictory requirements on the board of county commissioners in holding incorporation elections. *See id.* The statute granted the board the discretion to refuse to hold an election under certain conditions. *See id.* At the same time, the statute required the board to always hold elections unless a majority of petitioners withdraw their signatures. *See id.* The court concluded that these conflicting terms were "patently inconsistent" because the second provision would render the first "meaningless and void." *Id.*

¶ 16 Ansari and Lagana ask us to draw a parallel with *Nelson* here, but we refuse based on our determination that the elements and penalties of Internet enticement differ significantly from the inchoate crimes of attempt, conspiracy, and solicitation. Moreover, unlike *Nelson*, the statutory scheme taken as a whole is reasonable in light of the State's interest in punishing inchoate crimes more severely as they near consummation.

¶ 17 We turn first to the differences between Internet enticement and other inchoate crimes. The most notable difference is that attempt, conspiracy, and solicitation impose a higher evidentiary burden on the State. The crime of attempt requires a proof of a "substantial step towards the commission of the offense" that is "strongly corroborative of the actor's mental state." Utah Code Ann. 76–4–101(1)–(2) (Supp.2004).[4] Similarly, criminal solicitation requires the solicitation to be made "under circumstances strongly corroborative of the actor's intent that the offense be committed." *Id.* § 76–4–203(2) (2003). Conspiracy also requires an "overt act in pursuance of the conspiracy." *Id.* § 76–4–201 (2003). In contrast, section 76–4–401 does not require "overt" or "strongly corroborative evidence." *See id.* § 76–4–401(1).

¶ 18 The second major difference is that attempt, conspiracy, and solicitation impose a more severe penalty. An attempt or conspiracy with the intent to commit a sex offense on a child is a first degree felony. *See id.* §§ 76–4–102(2)(c), –202(2). A solicitation to commit a sex offense on a child is a second degree felony. *See id.* § 76–4–204(2) (2003). In contrast, section 76–4–401 is scaled in all cases to impose a penalty one degree lower than the intended crime. *See id.* § 76–4–401(3).

¶ 19 Finally, the reason for these differences must be understood in the context of the State's statutory scheme imposing higher penalties the nearer a defendant arrives at completing the underlying crime. For example, the crime of Internet enticement would be more appropriate in a case where, as here, a defendant solicits sex from an undercover police officer on the Internet believing he is communicating with a minor. In such a case, attempt, conspiracy, and solicitation may be

---

clause imbedded in the Internet enticement statute avoids this result by indicating that if the defendant's acts "amount to" attempt to commit statutory rape, then Internet enticement does not act as a lesser crime under the *Shondel* analysis.

Recent interpretations of *Shondel* have limited its holding to statutes with "identical elements," *State v. Fedorowicz*, 2002 UT 67, ¶ 48, 52 P.3d 1194, but this does not change our conclusion. It is likely that this clarification of the law ended

the need for the "not amounting to" language and allowed the legislature to safely remove it in the 2003 amendment to section 76–4–401.

4. The version of the attempt statute in force in 2002 required evidence "strongly corroborative of the actor's intent to commit the offense." Utah Code Ann. § 76–4–101 (2003) (amended 2004).

difficult to prove because the State must establish the defendant's actions are "strongly corroborative" of an intent to commit a felony or involve an "overt act." *See id.* §§ 76–4–101, –201, –203. The charge of Internet enticement would be more appropriate because it does not require "strong corroboration" of intent. *See id.* § 76–4–401.

¶ 20 In contrast, the defendant may contact a minor via the Internet, meet the minor, and be on the verge of consummating a felonious sexual act with the minor before being stopped by police. In that case, the higher crime of attempt, for example, would be appropriate because the State could probably prove "strong corroboration" of an intent to commit the underlying felony.

¶ 21 In sum, we conclude that although Internet enticement and other inchoate crimes may interlock, they do so in a way that allows the State to prosecute efforts to seduce children at different stages. If the predator is caught early in his effort, the State may charge Internet enticement, and if caught after the crime had developed, the State may have evidence to charge the greater crimes of attempt, conspiracy, and solicitation. Thus, the Internet enticement statute is not "patently inconsistent" nor "so flawed that it is entirely inoperable." *Nelson v. Salt Lake County,* 905 P.2d 872, 876 (Utah 1995). To the contrary, we hold that the elements of section 76–4–401 are distinct from other inchoate crimes and are part of a reasonable statutory scheme to punish inchoate crimes according to their relative degree of completion.

¶ 22 Thus, we read the plain language of section 76–4–401 to not require the State to affirmatively disprove attempt, conspiracy, and solicitation. Even if we were to adopt Ansari and Lagana's reading, we see no "patent inconsistency" because the elements and penalties of section 76–4–401 are distinct from those of attempt, conspiracy, and solicitation. Accordingly, we reject Ansari and Lagana's challenge.

## II. Commerce Clause

¶ 23 Ansari and Lagana next argue that the Utah Internet enticement statute violates the Commerce Clause by imposing an undue burden on interstate commerce. Congress has plenary power to regulate interstate commerce and, even in the absence of federal action, courts have determined that a "negative or dormant implication of the Commerce Clause prohibits state ... regulation ... that discriminates against or unduly burdens interstate commerce and thereby 'imped[es] free private trade in the national marketplace.'" *General Motors Corp. v. Tracy,* 519 U.S. 278, 287, 117 S.Ct. 811, 136 L.Ed.2d 761 (1997) (quoting *Reeves, Inc. v. Stake,* 447 U.S. 429, 437, 100 S.Ct. 2271, 65 L.Ed.2d 244 (1980)) (other citations omitted). Thus, under the Dormant Commerce Clause, a state cannot pass laws that discriminate against out-of-state economic interests or that impose a "burden on interstate commerce [which] clearly exceeds the local benefits." *Brown–Forman Distillers Corp. v. New York State Liquor Auth.,* 476 U.S. 573, 578–79, 106 S.Ct. 2080, 90 L.Ed.2d 552 (1986) (citing *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970)).

¶ 24 Ansari and Lagana claim the Utah Internet enticement statute is invalid under the Dormant Commerce Clause because it "unconstitutionally governs conduct occurring wholly outside the State of Utah" and because the Internet, "by its unique nature," is within the exclusive domain of the federal government. In other words, Ansari and Lagana alert us to the possibility that, for example, a Nevada resident could use the Internet to solicit sex from a minor he thought to be a resident of Nevada, but in reality, is a resident of Utah. Thus, this argument concludes that the statute allows Utah to regulate activities occurring in Nevada and, by allowing a state to regulate the Internet, subjects Internet users everywhere to conflicting regulations.

¶ 25 Before considering the substance of this challenge we must determine whether Ansari and Lagana have standing to assert the rights of nonresidents who may be affected by the statute. Although the issue of standing was not raised in the lower court, we may address it sua sponte. *See, e.g., Washington County Water Conservancy Dist. v. Morgan,* 2003 UT 58, ¶ 26, 82 P.3d

1125; *State v. Schlosser,* 774 P.2d 1132, 1140 (Utah 1989) (Howe, J., dissenting) ("We have never required [standing] to be raised by the parties in the trial court or in this Court. . . . Standing is an issue that a court can raise sua sponte at any time." (quotations and citation omitted)).

¶ 26 Our consideration of standing comprises three steps. We must first determine the type of challenge Ansari and Lagana assert: whether they challenge the constitutionality of the statute on its face or as it is applied to the particular facts of their case. Second, we must determine whether they have standing to assert that particular type of challenge. Finally, if we determine that they have standing, we consider the substance of their challenge.

### A. Nature of the Constitutional Challenge

¶ 27 A statute can be "unconstitutional either on its face or as applied to the facts of a given case." *State v. Herrera,* 1999 UT 64, ¶ 4 n. 2, 993 P.2d 854. When asserting an as-applied challenge, the party claims that, under the facts of his particular case, "the statute was applied . . . in an unconstitutional manner." *Id.* In contrast, "[w]hen asserting a facial challenge, a party seeks to vindicate not only his own rights, but those of others who may be adversely impacted by the statute in question." *City of Chicago v. Morales,* 527 U.S. 41, 55–56, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999). In making a facial challenge, the challenger asserts that the statute is so constitutionally flawed that " 'no set of circumstances exists under which the [statute] would be valid.' " *Herrera,* 1999 UT 64, ¶ 4 n. 2, 993 P.2d 854 (quoting *United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987)) (alteration in original).

¶ 28 We may safely conclude that Ansari and Lagana assert a facial challenge because they do not brief an "as-applied" issue, nor could they, because neither was injured as an out-of-state participant in Interstate commerce. Both are in fact residents of Utah

and their conduct occurred wholly in Utah. They sent their messages from a Utah location to a Utah recipient and planned to meet the intended victims in Utah locations. Hence, their challenge is a facial one because they are Utah residents seeking to "vindicate not only [their] own rights, but those of others who may also be adversely impacted by the statute," namely residents of other states. *Morales,* 527 U.S. at 55, 119 S.Ct. 1849.

### B. Standing to Assert a Facial Challenge

¶ 29 We next determine that Ansari and Lagana do not have standing to assert their facial Commerce Clause challenge. We note at the outset that the question of standing here is governed by state and not federal standing rules. *See Provo City Corp. v. Willden,* 768 P.2d 455, 456–57 (Utah 1989) ("[T]he federal rules of standing, as such, are not binding on state courts, and [the federal rules] are not necessarily relevant to the development of the standing rules that apply in Utah's state courts.") (reviewing a First Amendment challenge).

¶ 30 Nevertheless, in deciding whether Ansari and Lagana have standing based on the potential injury to out-of-state Internet users, we take guidance first from the recent Supreme Court holding in *Sabri v. United States,* which provides a stern reminder that "facial challenges are best when infrequent." —— U.S. ——, ——, 124 S.Ct. 1941, 1948, 158 L.Ed.2d 891 (2004). In that case, the defendant was indicted with bribing state officials in violation of federal law. *See id.* at 1944–45. On appeal, the defendant, much like Ansari and Lagana here, asserted a facial challenge to the federal law under the Commerce Clause.[5] *See id.* at 1945. The Court rejected the substance of his facial challenge, *see id.* at 1945–49, and went on to express its disapproval of the defendant's "technique for challenging his indictment by facial attack on the underlying statute," *id.* at 1948.

¶ 31 The Court identified two dangers posed by wholesale facial challenges to stat-

---

**5.** Specifically, the defendant claimed that the statute was outside Congress's Commerce Clause power because it did not require the government to prove a connection between the alleged bribe

money involved and federal funds provided to the state. *See Sabri v. United States,* —— U.S. ——, ——, 124 S.Ct. 1941, 1945, 158 L.Ed.2d 891 (2004).

utes and cautioned courts to adopt a "skeptical approach" to such challenges. *Id.* First, "[f]acial adjudication carries too much promise of 'premature interpretatio[n] of statutes' on the basis of factually bare-bones records." *Id.* (quoting *United States v. Raines,* 362 U.S. 17, 22, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960)) (alteration in original). Second, such challenges are at their core nothing more than an "overbreadth challenge" in which "the most [the challenger] could say [is] that the statute could not be enforced against him, because it could not be enforced against someone else whose behavior would be outside the scope of [the legislature's] ... authority to legislate." *Id.* The Court has "recognized the validity of facial attacks alleging overbreadth ... in relatively few settings" because such challenges "call for relaxing familiar requirements of standing, to allow a determination that the law would be unconstitutionally applied to different parties and different circumstances from those at hand." *Id.* Hence, the Court has permitted overbreadth challenges based on free speech, the right to travel, abortion, and section 5 of the Fourteenth Amendment, but "[o]utside these limited settings, and absent a good reason, we do not extend an invitation to bring overbreadth claims." *Id.* at 1948–49.

¶ 32 The Utah Supreme Court has also recognized the dangers implicit in facial challenges to the constitutionality of criminal statutes. In *State v. Mace,* the court refused to reach a defendant's substantive challenge to the constitutionality of a statute because he merely asserted the rights of hypothetical defendants. *See* 921 P.2d 1372 (Utah 1996).

¶ 33 In that case, Aaron Mace entered a woman's apartment on the pretense of warning her that someone was "tampering with her car." *Id.* at 1374. After asking to use the bathroom, he emerged "wearing rubber gloves and holding a knife and a roll of duct tape," tied the woman's hands, raped her, and drove her to her bank where he forced her to withdraw $100 for him. *Id.* Mace asserted an insanity defense based on an "ego dystonic form of obsessive compulsive paraphilia," which caused in him a "compulsive, uncontrollable need to have sexual intercourse, even though [he] does not want to

do so." *Id.* at 1374–75. Nonetheless, he was convicted based on the fact that the Utah insanity defense scheme still allows conviction when the requisite mens rea is present even though the defendant may not fully appreciate the wrongfulness of the conduct or is unable to control it. *See id.* at 1376.

¶ 34 Mace challenged his conviction on the grounds that the Utah insanity defense scheme permitted cruel and unusual punishment and, therefore, facially invalid under the Eight Amendment. *See id.* at 1374–79. In response, the court utilized a three-step analysis to determine that the defendant did not have standing to assert his facial challenge. *See id.* at 1379.

¶ 35 The court explained that in reviewing standing to assert a facial challenge it would first consider whether the defendant had a "personal stake in the controversy" and not " '[a] mere allegation of an adverse impact.' " *Id.* (quoting *Jenkins v. Swan,* 675 P.2d 1145, 1150 (Utah 1983)). In the absence of a personal stake, then the defendant would still have standing if there were no challenger with "a 'more direct interest in the issues who can more adequately litigate the issues.' " *Id.* (quoting *Jenkins,* 675 P.2d at 1150). Finally, a defendant may yet have standing if the court determines that " 'the issues raised by the [complainant] are of sufficient public importance in and of themselves to grant ... standing.' " *Id.* (quoting *Jenkins,* 675 P.2d at 1150) (alterations in original). Such a public urgency exists when " 'the constitutionally protected interests infringed ... are so important that their protection need not await the perfect plaintiff.' " *Id.* (quoting *Provo City Corp. v. Willden,* 768 P.2d 455, 457 (Utah 1989)).

¶ 36 The court concluded that Mace met none of these criteria. *See id.* Under the first step, the court concluded that "Mace has no personal stake in his claim that the statutory scheme might punish people who are unable to appreciate the wrongfulness of their conduct" because "[a]s the facts indicate, Mace did appreciate the wrongfulness of his conduct." *Id.* Under the second step, the court concluded that "there are more appropriate litigants to pursue Mace's claim, namely, those individuals whose rights Mace

seeks to assert: those whose mental illness made it impossible for them to appreciate the wrongfulness of their conduct." *Id.* Finally, the court concluded that the issue was not of sufficient public importance because "[e]ven if the statutory scheme is susceptible to unconstitutional application, it is more appropriate for us to await a litigant who may actually be harmed by such application. Deciding the issue now would have no conceivable concrete benefit to anyone." *Id.*

¶ 37 In turning now to the facial Commerce Clause challenge made by Ansari and Lagana, we note at the outset that their challenge triggers many of the concerns addressed by the United States Supreme Court in *Sabri v. United States.* We share that Court's concern that Ansari and Lagana's facial challenge "carries too much promise of premature interpretatio[n] of [the] statute[ ] on the basis of [a] factually bare-bones record[ ]." —— U.S. ——, ——, 124 S.Ct. 1941, 1948, 158 L.Ed.2d 891 (2004) (quotation and citation omitted). Here, Ansari and Lagana's challenge is based entirely on hypothetical concerns that residents of other states may be adversely affected by this statute. It would be ill-advised to strike a statute based on such a limited understanding of the realities of the Internet and the actual effects on its users.

¶ 38 Similarly, like the *Sabri* Court, we are wary that this challenge amounts to nothing more than an "overbreadth challenge" in which Ansari and Lagana merely claim "that the statute could not be enforced against [them], because it could not be enforced against someone else whose behavior would be outside the scope of [Utah]'s ... authority to legislate." *Id.* Here, Ansari and Lagana were not injured by any unlawful restraint on interstate commerce; yet they claim to assert the rights of those that *might* be. Though cloaked in terms of the Commerce Clause, we conclude, as the *Sabri* Court, that the challenge amounts to nothing more than a mere assertion that the statute is overboard and may impose unintended effects on unintended parties. Such an assertion, even if it were to have a solid constitutional basis, would be best raised by out-of-state Internet users injured in fact by the Utah statute.

Given that Ansari and Lagana assert borrowed constitutional rights and due to their limited ability to provide first-hand testimony regarding the out-of-state effects of the Utah statute, we view this facial challenge with a high degree of skepticism.

¶ 39 Our skepticism is confirmed by applying the Utah standing analysis outlined in *Mace,* 921 P.2d at 1378–79. We conclude first that Ansari and Lagana, like Mace, have no "personal stake" in their Commerce Clause claim because they were not injured as participants in interstate commerce. *See id.* at 1379. Both were residents of Utah, contacting persons thought to be minors in Utah to engage in sexual conduct at a Utah location. Any challenge they assert is not personal to themselves but borrowed from the hypothetical injury to hypothetical out-of-state Internet users.

¶ 40 We next consider whether Ansari and Lagana could have standing to assert the rights of others on grounds that there is no challenger with "a more direct interest in the issues who can more adequately litigate the issues." *Id.* (quotations and citation omitted). We have already answered this query in the first step of the analysis: Ansari and Lagana assert the rights of out-of-state Internet users harmed by the Utah statute, and, if they exist, they would surely have "a more direct interest in the issues" and able to "more adequately litigate the issues." *Id.* (quotations and citations omitted). Thus, like the *Mace* court, we conclude that "there are more appropriate litigants to pursue [their] claim," namely, residents of other states who are injured in fact by the Utah statute. *Id.*

¶ 41 Finally, under the *Mace* analysis, Ansari and Lagana may have standing if we determine that "the issues raised by [them] are of sufficient public importance in and of themselves to grant ... standing." *Id.* We have already discussed our suspicion that this challenge amounts to nothing more than an overbreadth challenge cloaked as a constitutional issue. Ansari and Lagana allege injury in the abstract and, without reifying facts to indicate such injury actually exists and is widespread, we refuse to consider it an important public concern. Regardless, we agree with the *Mace* court that "[even if the statutory scheme is susceptible to unconstitu-

tional application, it is more appropriate for us to await a litigant who may actually be harmed by such application.]" *Id.* Accordingly, we decline to review their Dormant Commerce Clause challenge and await a more appropriate representative of the concerns raised.

### III. Vagueness

¶ 42 Finally, Ansari and Lagana challenge section 76–4–401 as unconstitutionally vague. A statute is impermissibly vague if it either (a) "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or (b) "authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732–33, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000); *see State v. MacGuire*, 2004 UT 4, ¶ 13, 84 P.3d 1171.

¶ 43 Ansari and Lagana argue that section 76–4–401 does not provide a person of ordinary intelligence a reasonable opportunity to understand what conduct is prohibited. They also argue that the statute's imprecise terms permits discretionary enforcement. Since we have already determined that section 76–4–401 contains no fatal internal inconsistencies, both of these arguments must rely on the determination that the statute's terms are impermissibly uncertain.

¶ 44 We hold that Ansari and Lagana do not have standing to challenge the vagueness of the Internet enticement statute. It is well-understood that in order to establish standing to challenge vagueness, a defendant has the burden of proving the statute is " 'impermissibly vague in all of its applications.' " *MacGuire*, 2004 UT 4 at ¶ 12, 84 P.3d 1171 (quoting *Village of Hoffman Es-*

*tates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494–95, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982)); *see also Greenwood v. City of N. Salt Lake*, 817 P.2d 816, 820 (Utah 1991). Thus, a defendant who "engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Greenwood*, 817 P.2d at 820 (quotations and citation omitted).

¶ 45 In the present case, Ansari and Lagana cannot claim the statute is vague "in all of its applications" because their conduct is "clearly proscribed" by the statute. *Id.* Indeed, their efforts to contact a thirteen-year-old girl to engage in sexual activities is the quintessence of "seduc[ing], lur[ing], or entic[ing]" a minor. Utah Code Ann. § 76–4–401. Given that Ansari and Lagana raise no uncertainty regarding the statute's proscription of their conduct, we refuse their invitation to conjure conditions under which the statute could be vague. Accordingly, we need not arrive at the substance of their challenge.[6]

### CONCLUSION

¶ 46 Having determined that the terms of section 76–4–401 are not fatally inconsistent and that Ansari and Lagana do not have standing to assert their Commerce Clause and vagueness challenges, we affirm.

¶ 47 WE CONCUR: JUDITH M. BILLINGS, Presiding Judge and RUSSELL W. BENCH, Associate Presiding Judge.

---

**6.** Even if they were to have standing, we would reject the substance of their challenge. In reviewing for vagueness, we "presume[ ] that the statute is valid, and ... resolve any reasonable doubts in favor of constitutionality." *State v. Morrison*, 2001 UT 73,¶ 5, 31 P.3d 547. In confronting this burden, it is not enough for the defendant to merely " 'inject doubt as to the meaning of words where no doubt would be felt by the normal reader.' " *State v. MacGuire*, 2004 UT 4,¶ 18, 84 P.3d 1171 (quoting *United States v. Powell*, 423 U.S. 87, 93, 96 S.Ct. 316, 46 L.Ed.2d 228 (1975)). The terms of a statute need not provide "mathematical certainty" and may be "marked by flexibility and reasonable breadth, rather than 'meticulous specificity' " as long as

"it is clear what the ordinance as a whole prohibits." *Grayned v. City of Rockford*, 408 U.S. 104, 110, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972) (quotations and citations omitted); *see also Greenwood v. City of North Salt Lake*, 817 P.2d 816, 820 (Utah 1991). Here, any uncertainty raised by Ansari and Lagana is minimal. We are confident that the statute would put normal readers on notice that using the Internet to make sexual advances on a known minor will have criminal consequences. Moreover, the terms of the statute are sufficiently precise that they do not lend themselves to discretionary enforcement. Accordingly, we would conclude that section 76–4–401 is not unconstitutionally vague.